GEORGE SANDOR *v.* NEW HAMPSHIRE
INSURANCE COMPANY
(SC 15588)

Callahan, C. J., and Norcott, Katz, McDonald and Peters, Js.

Argued March 19—officially released July 22, 1997

*Donald P. Guerrini*, for the appellant (defendant).

*Robert G. Golger*, for the appellee (plaintiff).

*Opinion*

NORCOTT, J. This appeal requires us to determine whether, under General Statutes § 14-60 (a),[1] the insurer

---

[1] General Statutes § 14-60 (a) provides: "No dealer or repairer may rent or allow or cause to be rented, or operate or allow or cause to be operated for hire, or use or allow or cause to be used for the purpose of conveying passengers or merchandise or freight for hire, any motor vehicle registered under a general distinguishing number and mark. No dealer or repairer may loan a motor vehicle or number plate or both to any person except for the purpose of demonstration of a motor vehicle, or when a motor vehicle owned by or lawfully in the custody of such person is undergoing repairs, or when such person has purchased a motor vehicle, the registration of

of an automobile dealer must provide primary uninsured motorist benefits when, in the course of a borrower's authorized test drive of an insured vehicle, a passenger in the vehicle is injured as a result of the negligence of an uninsured third party tortfeasor. The defendant, New Hampshire Insurance Company, appeals from the judgment of the trial court upholding the ruling by an arbitration panel that the defendant, the insurer of Jim's Auto Repair (Jim's Auto), and not the borrower's insurer, was required to provide primary uninsured motorist coverage to the plaintiff, George Sandor. We affirm the judgment of the trial court.

The following undisputed facts are relevant to this appeal. On December 31, 1992, Jim's Auto loaned to Ralph Masselli a motor vehicle for the purpose of taking a test drive. The plaintiff, Masselli's brother-in-law, accompanied Masselli on the test drive and was injured

which by him is pending, and in any case for not more than thirty days in any year, provided such person shall furnish proof to the dealer or repairer that he has liability and property damage insurance which will cover any damage to any person or property caused by the operation of the loaned motor vehicle, motor vehicle on which the loaned number plate is displayed or both. Such person's insurance shall be the prime coverage. If the person to whom the dealer or repairer loaned the motor vehicle or the number plate did not, at the time of such loan, have in force any such liability and property damage insurance, such person and such dealer or repairer shall be jointly liable for any damage to any person or property caused by the operation of the loaned motor vehicle or a motor vehicle on which the loaned number plate is displayed. Each dealer or repairer shall keep a record of each loaned number plate showing the date loaned, the vehicle identification number of the vehicle on which such plate is displayed, the date returned and the name, address and operator's license number of the person operating any vehicle with such loaned number plate. Such dealer or repairer shall give a copy of this record to each person to whom such plate or vehicle and plate are loaned which shall be carried in the motor vehicle at all times when operated upon a public highway. This record shall be retained by the dealer or repairer for a period of six months from the date on which the number plate or motor vehicle or both were loaned and such record shall be available during business hours for examination by any police officer or inspector designated by the Commissioner of Motor Vehicles."

when the loaned motor vehicle that Masselli was driving collided with a motor vehicle owned and negligently operated by Dawn Cappellieri. Masselli was not at fault in the collision. At the time of the accident, neither the plaintiff nor Cappellieri was insured. Masselli was insured under an automobile policy issued by the Aetna Insurance Company (Aetna), that provided $25,000 in liability coverage and $25,000 in uninsured motorist coverage for each of the two vehicles that Masselli owned. Jim's Auto was insured under a garage policy issued by the defendant that provided $100,000 in liability coverage and $100,000 in uninsured motorist coverage.

The plaintiff sought uninsured motorist benefits under the policy issued to Jim's Auto by the defendant, but the defendant denied coverage. Thereafter, the plaintiff applied to the trial court for an order to proceed with arbitration. The trial court granted the application. On December 13, 1995, a panel of three arbitrators conducted a hearing to determine whether the defendant was required to provide primary uninsured motorist coverage to the plaintiff. At the hearing, both the plaintiff and the defendant stipulated that a question of law existed as to the applicability of § 14-60 (a) to the determination of whether the defendant's uninsured motorist insurance was primary. The parties also agreed throughout the proceedings that the uninsured motorist coverage provided by the defendant to the dealer plainly applied, as a contractual matter, to the plaintiff. The only question before the arbitrators was whether the terms of § 14-60 (a) abrogated the defendant's contractual obligation under the circumstances of this case.

The arbitration panel concluded that the defendant was required to provide primary uninsured motorist coverage to the plaintiff.[2] The defendant subsequently

[2] Arbitrators Daniel E. Brennan, Jr., and Richard Mulrooney filed the majority decision. Arbitrator Carl E. Cella dissented and filed a separate opinion.

filed an application with the trial court to vacate, correct or modify the arbitrators' award on the ground that § 14-60 (a) requires the policy issued to Masselli, as the borrower of the loaned motor vehicle, to be the primary source of uninsured motorist benefits for the plaintiff. On the basis of its review of General Statutes §§ 38a-336 (d)[3] and 14-60 (a), the trial court denied the defendant's motion. The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

On appeal, the defendant claims that the trial court improperly upheld the arbitration panel's conclusion that the defendant should provide primary uninsured motorist coverage to the plaintiff. The defendant argues that, under § 14-60 (a), the automobile insurance policy issued to Masselli as the borrower of the loaned motor vehicle is the primary source of uninsured motorist coverage for the plaintiff. We are unpersuaded and, accordingly, we affirm the judgment of the trial court.

The defendant's claim requires us to decide for the first time whether, in setting forth the priority of a borrower's liability and property insurance, § 14-60 (a)

---

[3] General Statutes § 38a-336 (d) provides in relevant part: "If a person insured for uninsured and underinsured motorist coverage is an occupant of a nonowned vehicle covered by a policy also providing uninsured and underinsured motorist coverage, the coverage of the occupied vehicle shall be primary and any coverage for which such person is a named insured shall be secondary. All other applicable policies shall be excess. The total amount of uninsured and underinsured motorist coverage recoverable is limited to the highest amount recoverable under the primary policy, the secondary policy or any one of the excess policies. The amount paid under the excess policies shall be apportioned in accordance with the proportion that the limits of each excess policy bear to the total limits of the excess policies. If any person insured for uninsured and underinsured motorist coverage is an occupant of an owned vehicle, the uninsured and underinsured motorist coverage afforded by the policy covering the vehicle occupied at the time of the accident shall be the only uninsured and underinsured motorist coverage available."

also establishes the priority of a borrower's uninsured motorist coverage. In resolving this issue, "we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of this case, including the question of whether the language actually does apply. In seeking to determine that meaning, 'we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter.'" *United Illuminating Co.* v. *New Haven*, 240 Conn. 422, 431, 692 A.2d 742 (1997).

We note at the onset that the legislature has imposed broad liability for many years on lenders of automobiles for injuries arising out of the misuse of their automobiles. See, e.g., General Statutes § 14-154a; *Gionfriddo* v. *Avis Rent A Car System, Inc.*, 192 Conn. 280, 472 A.2d 306 (1984). Because the plaintiff's injury resulted from the misuse of a third party's automobile, the legislative objective embodied in § 14-154a is not directly implicated in this case. Nonetheless, the legislature's broad policy of holding lenders responsible for injuries associated with the use of their automobiles directs us to construe narrowly those statutes that limit lender liability.

With this principle in mind, we consider the language of the statute. Section 14-60 (a) permits an automobile dealer to lend a motor vehicle for the purpose of demonstration "provided such person shall furnish proof to the dealer or repairer that he has liability and property damage insurance which will cover any damage to any person or property *caused by the operation of the loaned motor vehicle* . . . ." (Emphasis added.) This clause has been part of § 14-60 (a) since 1959; see Public Acts 1959, No. 499, § 1; and it emphasizes the responsibility of the borrower's insurer for any damage *caused*

*by* the borrower in the operation of the loaned motor vehicle. In 1961, the legislature amended § 14-60 (a) to require that the automobile liability and property insurance of the borrower of a motor vehicle loaned by the dealer is the primary source of coverage. See Public Acts 1961, No. 277, § 1; *Whitfield* v. *Empire Mutual Ins. Co.*, 167 Conn. 499, 505, 356 A.2d 139 (1975). The legislature again amended § 14-60 (a) in 1973 "to clarify the consequences of a dealer's violation of the statute . . . ." *Cook* v. *Collins Chevrolet, Inc.*, 199 Conn. 245, 249, 506 A.2d 1035 (1986). The provision added in 1973 requires that, if the borrower does not have any automobile liability or property insurance, the borrower and the dealer are *"jointly liable* for any damage to any person or property *caused* by the operation of such loaned motor vehicle . . . ." (Emphasis added.) Public Acts 1973, No. 73-233. The statute reflects the legislative effort to protect the public from reckless driving of loaned motor vehicles. See 8 S. Proc., Pt. 6, 1959 Sess., pp. 2595–96. By giving an injured person the statutory right to recover from the borrower's insurer when the borrower is at fault, § 14-60 (a) provides an incentive to those who test drive motor vehicles to drive with the same care that they would exercise if they were driving a motor vehicle they owned.

As the defendant concedes, although § 14-60 (a) establishes the priority of a borrower's automobile liability and property insurance, the statute is silent about uninsured motorist insurance. The defendant nevertheless argues that, because the legislature has required uninsured motorist insurance to be included in all automobile insurance liability policies since 1967, the references in § 14-60 (a) to liability and property insurance must be read to include uninsured motorist coverage. We disagree.

The Connecticut uninsured motorist statute, § 38a-336, formerly General Statutes (Rev. to 1989) § 38-175c,

requires that "[e]ach automobile liability insurance policy shall provide insurance, herein called uninsured and underinsured motorist coverage . . . for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and underinsured motor vehicles and insured motor vehicles, the insurer of which becomes insolvent prior to payment of such damages, because of bodily injury, including death resulting therefrom. . . ." The accompanying regulation, § 38a-334-6 (a) of the Regulations of Connecticut State Agencies provides that the "insurer shall undertake to pay on behalf of the insured all sums which the insured shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by the insured caused by an accident involving the uninsured motor vehicle. This coverage shall insure the occupants of every motor vehicle to which the bodily injury liability coverage applies. . . ." The defendant contends that, in order to construe § 14-60 (a) coherently and consistently with § 38a-336, we must interpret the references to liability and property insurance in § 14-60 (a) to include uninsured motorist insurance and that, therefore, we must conclude that primary coverage in this case is that afforded by the Aetna policy issued to Masselli.

A careful analysis of the language and legislative history of §§ 14-60 (a) and 38a-336 persuades us, to the contrary, that the legislature did not intend the references to liability and property insurance in § 14-60 (a) to include uninsured motorist coverage. First, we note as a general matter that uninsured motorist insurance operates upon a different set of principles from those upon which automobile liability and property insurance are premised, and that uninsured motorist insurance protects the named insured against risks that are fundamentally different from liability and property insurance.

Automobile liability and property insurance covers damage to other persons or motor vehicles for which the named insured or named insured's covered motor vehicle is, at least in some measure, responsible. See R. Keeton & A. Widiss, Insurance Law (1988) § 4.8 (a), pp. 376–77 and § 4.9 (a), pp. 385–86. In contrast, "the purpose of [un]insured motorist coverage is to protect the named insured and other additional insureds from suffering an inadequately compensated injury caused by an accident with an inadequately insured automobile." (Internal quotation marks omitted.) *Florestal* v. *Government Employees Ins. Co.*, 236 Conn. 299, 305, 673 A.2d 474 (1996). The public policy established by the uninsured motorist statute is to ensure that an insured recovers damages he or she would have been able to recover if the uninsured motorist had maintained a policy of liability insurance. *Smith* v. *Safeco Ins. Co. of America*, 225 Conn. 566, 573, 624 A.2d 892 (1993); *Harvey* v. *Travelers Indemnity Co.*, 188 Conn. 245, 249, 449 A.2d 157 (1982). Because uninsured motorist insurance operates upon principles that are different from those on which liability and property insurance are premised, we do not agree with the defendant's contention that, as a matter of cogent statutory interpretation, all references in § 14-60 (a) to automobile liability and property insurance also must include uninsured motorist coverage.

Second, the text of the uninsured motorist statute provides compelling support for our conclusion that the legislature did not intend to include uninsured motorist coverage within the ambit of § 14-60 (a). Subsection (d) of § 38a-336, which became effective on January 1, 1994, provides in relevant part: "If a person insured for uninsured and underinsured motorist coverage is an occupant of a nonowned vehicle covered by a policy also providing uninsured and underinsured motorist coverage, the coverage of the occupied vehicle shall be

primary and any coverage for which such person is a named insured shall be secondary. All other applicable policies shall be excess. . . ." This amendment establishes the priority of multiple uninsured motorist policies by providing that the policy of the host motor vehicle is primary, the policy under which the occupant is a named insured is secondary, and all other policies for which the occupant may be an insured, such as a resident relative, are excess. Although the plaintiff in this case was uninsured at the time of the accident and, therefore, the priorities established by § 38a-336 (d) do not control this case, § 38a-336 (d) informs our interpretation of § 14-60 (a). If we were to accept the defendant's argument that § 14-60 (a) applies to priorities of uninsured motorist policies, we would create a direct conflict between § 14-60 (a) and § 38a-336 (d) in those cases in which an insured passenger in an insured vehicle loaned by an automobile dealership to an insured borrower is involved in an accident caused by an uninsured motorist. According to the defendant, § 14-60 (a) would require that the borrower's uninsured policy provide primary coverage for the plaintiff's injuries. In the same situation, however, § 38a-336 (d) would require that the dealership's uninsured policy provide primary coverage for the plaintiff's injuries. We are unwilling to create such an anomaly by accepting the defendant's argument. See *Stein* v. *Hillebrand*, 240 Conn. 35, 42–43, 688 A.2d 1317 (1997) (legislature presumed to have knowledge of existing laws and presumed to intend to create harmonious body of law).

Finally, we are unpersuaded that a construction of § 14-60 (a) to include uninsured motorist coverage would serve to effect the legislative policy embodied in § 14-60 (a). In providing that the borrower's liability and property insurance is to be the primary source of coverage, § 14-60 (a) reflects the legislative effort to encourage careful driving of motor vehicles loaned by

dealers. Uninsured motorist insurance protects against harm caused by an inadequately insured third party, rather than providing coverage for damage that the insured causes. We cannot conceive how construing the references to liability and property insurance in § 14-60 (a) to include uninsured motorist coverage would enhance the fundamental purpose of the statute.

In light of the plain language, history and legislative purpose of §§ 14-60 (a) and 38a-336 (d), we conclude that the legislature did not intend to include uninsured motorist coverage within the liability and property insurance coverage provisions of § 14-60 (a). The defendant's sole claim on appeal is that the arbitration panel failed to apply § 14-60 (a) in deciding that the defendant was required to provide primary uninsured motorist coverage to the plaintiff. Having concluded that § 14-60 (a) has no bearing on the resolution of this issue, we affirm the trial court's decision not to vacate the arbitrators' award.

The judgment is affirmed.

In this opinion the other justices concurred.