ANN B. LUNN *v.* CUMMINGS AND LOCKWOOD
(AC 18523)

Lavery, Schaller and Vertefeuille, Js.

Argued September 20, 1999—officially released January 18, 2000

[7] Because we hold that the trial court properly dismissed Lenge's counterclaim, we need not address his other claims.

John R. Williams, for the appellant (plaintiff).

Thomas J. Rechen, for the appellee (defendant).

*Opinion*

LAVERY, J. The plaintiff, Ann B. Lunn, appeals from the judgment of the trial court rendered on the granting of the defendant's motion for summary judgment in this legal malpractice action. On appeal, the plaintiff claims that the trial court improperly determined that no jury could conclude that (1) she had commenced her cause of action within the time limitation of General Statutes § 52-584b[1] and (2) the defendant's negligence caused her to suffer damages. The defendant's counterstatement of the issues raises two alternate bases on which to affirm the judgment. We need address only one of those grounds to resolve this appeal, specifically, whether a February 13, 1985 letter seeking approval to partition the real property at issue in this case constituted a "title certificate or opinion" within the meaning of § 52-584b. Because we hold, as a matter of law, that the letter is not a "title certificate or opinion" within

---

[1] General Statutes § 52-584b provides in relevant part: "Notwithstanding any provision of the general statutes, no action, whether in contract, tort or otherwise, against an attorney to recover for injury caused by negligence or by reckless or wanton misconduct in the preparation of and the execution and delivery of an attorney's title certificate or opinion, or the title search in connection therewith, shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, except that no such action may be brought more than ten years from the date of such delivery. . . ."

the meaning of the statute, we affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the plaintiff's appeal. In 1983, the plaintiff and her neighbor retained William H. Atkinson, an attorney and partner in the defendant law firm, Cummings and Lockwood, to represent them in the acquisition of certain real property (land) located between their respective properties and Scott's Cove in the Tokeneke section of Darien. The plaintiff's property and that of her neighbor were separated from the land by Contentment Island Road. The plaintiff and her neighbor acquired the land, approximately four acres, as tenants in common.

The land had been part of the estate of Robert Cudd, who had acquired it in 1950 from Norton, Inc. (Norton), a real estate development corporation. The deed conveying the land to Cudd contained a restrictive covenant running with the land, which provided in part that the "premises are not to be . . . subdivided for the purpose of sale or transfer . . . unless approval [is] first obtained" from Norton acting through one of its officers or its successor or assignee.

By 1975, Norton had sold its last parcel of land in the area. Norton, acting by its treasurer, Richard P. McGrath, who was one of the defendant's partners, and Hope Norton Iaccacci, executed a power of attorney and assignment, which forms the basis of the plaintiff's claim. The power of attorney and assignment states that "[i]n the event that either or both of the undersigned are unavailable at any time and for any reason to consent to or approve any matter relating to Tokeneke, in the Town of Darien, County of Fairfield and State of Connecticut, by virtue of any covenant, restriction or agreement (or equitable effect thereof) appearing in the Land Records of Darien and requiring the approval of

one or both of the undersigned, we hereby appoint any then-partner of the [defendant] firm . . . (acting alone, without the necessity for approval by his or her firm) our true and lawful attorney-in-fact and our successor in interest and our assignee for the purpose of giving such consent or approval."[2] The power of attorney was recorded in the Darien land records on March 1, 1976.

Approximately one year after they acquired the land, the plaintiff and her neighbor again sought Atkinson's legal services because they wanted to partition the land. As part of his representation, Atkinson, among other things, wrote a letter dated February 13, 1985, to the president of the Tokeneke Association (association), a nonstock corporation to which Norton had assigned its rights and interest in and to the roadways, drives and avenues in Tokeneke, seeking approval for the plaintiff and her neighbor to partition the land.[3] The association,

[2] The court noted that the power of attorney granted to the defendant was effective only in the event that McGrath or Iaccacci were unavailable to act. The restrictive covenant provided that approval may be obtained from the president, treasurer or successor of Norton, or the assignee of its rights and interest in and to the roads, ways, drives and avenues at Tokeneke.

[3] The letter, addressed to Warren MacKenzie, president of the association, states: "I understand that you are the President of the Tokeneke Association. I recently represented Mrs. James Glanville and Mrs. James Lunn in connection with the acquisition of a parcel of land measuring about four acres belonging to the estate of Robert Cudd and located opposite the Lunn and Glanville residences on Contentment Island Road. The property was purchased in the name of Mrs. Lunn and Mrs. Glanville as a single parcel. We have obtained approval from the Planning Commission to file the enclosed map in the Land Records and to effect a partition between Mrs. Lunn and Mrs. Glanville in accordance with that map. There is a restrictive covenant on the property which was imposed in a deed from Norton, Inc. to Robert L. Cudd dated October 10, 1950 recorded in the Darien Land Records in Book 147 at Page 363. The restrictive covenant provides that the premises are not to be subdivided for the purpose of sale or transfer unless approval first be obtained from Norton, Inc. or the assignee of Norton, Inc.'s right in and to the roads, drives etc., in Tokeneke. The restrictive covenant continues until January 1, 2000. A prior approval of a subdivision for purposes of selling a parcel from the original Cudd tract was obtained in October of 1969. The parcel approved has most recently been owned,

through its president, granted the plaintiff and her neighbor permission to partition the land.[4]

In 1986, the plaintiff retained an attorney not affiliated with the defendant to represent her in obtaining the necessary approvals to build a single-family dwelling on her portion of the partitioned land.[5] In 1990, the plaintiff applied to the association for approval to build a dwelling on the land. The association denied the application. The plaintiff, thereafter, sought judicial review of the denial. The Superior Court upheld the association's denial. See *Lunn* v. *Tokeneke Assn., Inc.*, Superior Court, judicial district of Fairfield, Docket No. 281517

according to our records, by Mr. and Mrs. Luellen A. Wilkins.

"In view of the fact that the approved map contains notes indicating that the parcels to be deeded to Mrs. Lunn and Mrs. Glanville are not approved as building sites, but are to be annexed to their existing house lots, I do not feel that this division is one which the restrictive covenant was intended to govern. Nonetheless, in order to avoid any uncertainty with respect to the division which we are about to make, we would like to obtain the Tokeneke Association's approval for the division as shown on the map. I enclose a form of letter which Mrs. Glanville and Mrs. Lunn would appreciate having signed.

"If there are any questions concerning the request, please do not hesitate to call me."

[5] The letter from the association dated March 18, 1985, states: "In accordance with the restrictive covenants contained in a Deed from Norton, Inc. to Robert L. Cudd dated October 10, 1950 and recorded in the Land Records of the Town of Darien, Connecticut in Book 147 at Page 363, the Tokeneke Association, as the successor to Norton, Inc. of said corporation's right and interest in the roadways, drives and avenues at Tokeneke in the said Town of Darien, hereby approves the division of the property on the west side of Contentment Island Road into Parcels 1A and 2A as shown on a certain map entitled, 'Properties of Ann B. Lunn & Nancy Glanville Darien, Conn.,' prepared by S. E. Minor & Co., Inc. dated October 27, 1983 which map is to be filed in the office of the Darien Town Clerk.

"It is understood that the approval given herein is not intended as a waiver of any other restrictive covenant contained in the Deed referred to above, nor a waiver of the right of the undersigned to require approval of any further division of either Parcels 1A or 2A as shown on said map."

[5] When the plaintiff and her neighbor sought permission to partition the land, they represented that they wanted to preserve the land as open space to maintain the natural environment and scenic view.

(March 3, 1992). On appeal, our Supreme Court affirmed the trial court's judgment. *Lunn* v. *Tokeneke Assn., Inc.*, 227 Conn. 601, 630 A.2d 1335 (1993).

The plaintiff commenced this action against the defendant in December, 1994, alleging "negligent and/or reckless and/or wanton misconduct in the preparation, execution and delivery of an attorney's title opinion."[6] The plaintiff alleged that the letter asserted that "the Tokeneke Association, and only the Tokeneke Association, had the power to execute approvals in accordance with the restrictive covenant."[7] The malpractice or negligence alleged by the plaintiff was that Atkinson's letter did not say that any partner in the defendant law firm could have executed the approval. The plaintiff alleged that if she had known that fact, she would not have applied to the association for approval of her subdivision plan. Because the association refused to permit her to build a dwelling, the plaintiff allegedly incurred substantial litigation fees and is unable to build on the land until the restrictions expire in 2000.

As special defenses to the plaintiff's complaint, the defendant alleged that the letter was not a title opinion within the meaning of § 52-584b[8] and that the plaintiff's

[6] Paragraph one of the plaintiff's complaint alleges: "This is an action against a firm of attorneys for negligent and/or reckless and/or wanton misconduct in the preparation, execution and delivery of an attorney's title opinion."

[7] Paragraph eight of the plaintiff's complaint alleges: "On February 13, 1985, the defendant, acting through the said William H. Atkinson in his capacity as a partner in the defendant law firm, having first conducted a title search in connection therewith, prepared, executed and delivered to the plaintiff and to Warren MacKenzie, Esq., the President of the Tokeneke Association, an opinion letter asserting that the Tokeneke Association, and only the Tokeneke Association, had the power to execute approvals in accordance with the restrictive covenant described in Paragraph 4 of this Complaint."

[8] The defendant's third special defense alleges: "To the best of Defendant's knowledge, the letter dated February 13, 1985, addressed to Warren McKenzie, Esq., by Defendant's partner William H. Atkinson, a copy of which is attached as Exhibit A and incorporated by reference and made a part hereof, is the only document relevant to the subject matter of this action signed

cause of action was barred by the statute of limitations set forth in § 52-584b. The defendant subsequently filed a motion for summary judgment, claiming that there were no genuine issues of material fact in that (1) the plaintiff did not receive an opinion letter from the defendant asserting that only the association had the power to grant approvals under the restrictive covenant, (2) the plaintiff's claims were barred by the three year statute of limitations for legal malpractice pursuant to General Statutes § 52-577 and (3) the plaintiff's claim that she was damaged by her reliance on the letter was far too speculative to create any issue of fact for trial. In a thorough and thoughtful memorandum of decision, the court granted the defendant's motion for summary judgment. Although the court questioned whether the letter constituted a title opinion, it assumed arguendo that it did and ruled that the plaintiff's cause of action had not been commenced within the time permitted under either § 52-584b or § 52-577 and did not reach the issue of whether the letter was an opinion letter within the meaning of § 52-584b.[9] On appeal, the defendant argues, as an alternate ground on which to affirm the judgment; see Practice Book § 63-4 (1) (A); that the letter was not an opinion letter. We affirm the judgment on the ground that the letter is not a title opinion or certificate within the meaning of § 52-584b.[10]

"Our standard of review of a trial court's decision to grant a motion for summary judgment is well estab-

on behalf of Defendant on or about that date. Said letter dated February 13, 1985 is not 'an attorney's title certificate or opinion, or the title search in connection therewith' within the meaning of General Statutes § 52-584b."

[9] For the sake of argument, the trial court assumed that the letter was an opinion letter but concluded that this lawsuit was not "brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered."

[10] The court concluded that the plaintiff did not commence her cause of action within the time permitted by § 52-577. The plaintiff did not challenge that conclusion on appeal.

lished. *Zichichi* v. *Middlesex Memorial Hospital,* 204 Conn. 399, 402, 528 A.2d 805 (1987). Practice Book § [17-49] requires that judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A material fact is a fact that will make a difference in the result of the case. See *Hammer* v. *Lumberman's Mutual Casualty Co.,* 214 Conn. 573, 578, 573 A.2d 699 (1990). The facts at issue are those alleged in the pleadings. See *Plouffe* v. *New York, N.H. & H.R. Co.,* 160 Conn. 482, 489, 280 A.2d 359 (1971). The party seeking summary judgment has the burden of showing the absence of any genuine issue as to all material facts, which, under applicable principles of substantive law, entitle him to a judgment as a matter of law. . . . *D.H.R. Construction Co.* v. *Donnelly,* 180 Conn. 430, 434, 429 A.2d 908 (1980). The party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. See Practice Book §§ [17-44] and [17-45]. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts. . . . *Connell* v. *Colwell,* 214 Conn. 242, 246–47, 571 A.2d 116 (1990). A motion for summary judgment is properly granted if it raises at least one legally sufficient defense that would bar the plaintiff's claim and involves no triable issue of fact. *Perille* v. *Raybestos-Manhattan-Europe, Inc.,* 196 Conn. 529, 543, 494 A.2d 555 (1985)." (Internal quotation marks omitted.) *Beebe* v. *East Haddam,* 48 Conn. App. 60, 64, 708 A.2d 231 (1998).

Section 52-584b provides in relevant part that "no action . . . against an attorney to recover for injury caused . . . in the preparation of and the execution and delivery of an attorney's *title certificate or opinion,*

or the title search in connection therewith . . . shall be brought but within two years . . . ." (Emphasis added.) The statute does not define "title certificate or opinion." We turn then to the well established tenets of statutory interpretation. See *Cotto* v. *United Technologies Corp.*, 251 Conn. 1, 6, 738 A.2d 623 (1999).

"Statutory construction is a question of law and therefore our review is plenary." (Internal quotation marks omitted.) *Mack* v. *LaValley*, 55 Conn. App. 150, 165, 738 A.2d 718, cert. denied, 251 Conn. 928, 742 A.2d 363 (1999). "The process of statutory interpretation involves a reasoned search for the intention of the legislature. *Frillici* v. *Westport*, 231 Conn. 418, 431, 650 A.2d 557 (1994). In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of this case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *United Illuminating Co.* v. *New Haven*, 240 Conn. 422, 431, 692 A.2d 742 (1997).

In construing § 52-584b, "we must start with the language employed by the legislature. *United Illuminating Co.* v. *Groppo*, 220 Conn. 749, 756, 601 A.2d 1005 (1992). Generally, when the language of a statute is plain and unambiguous, we need look no further than the words themselves because we assume that the language expresses the legislature's intent. *American Universal Ins. Co.* v. *DelGreco*, 205 Conn. 178, 193, 530 A.2d 171 (1987)." (Internal quotation marks omitted.) *Southington* v. *Commercial Union Ins. Co.*, 54 Conn. App. 328, 333, 735 A.2d 835, cert. granted on other grounds,

251 Conn. 906, 738 A.2d 1093 (1999). "The words of a statute are to be given their commonly approved meaning unless a contrary intent is clearly expressed." (Internal quotation marks omitted.) *Peabody N.E., Inc.* v. *Dept. of Transportation*, 250 Conn. 105, 122, 735 A.2d 782 (1999). "In construing a statute, common sense must be used and courts must assume that a reasonable and rational result was intended." *Norwich Land Co.* v. *Public Utilities Commission*, 170 Conn. 1, 4, 363 A.2d 1386 (1975).

We may resolve the issue by examining the relevant words of the statute, which are "title certificate or opinion." The nouns *certificate* and *opinion* are modified by the word *title*. For the purposes of this opinion, therefore, we must determine the meaning of *title*, which is not defined in our statutes. There is, however, common law that guides us in ascertaining the common meaning of the word *title*.

"[W]hen we have construed 'owner' in the context of real estate, we have defined the term with reference to title. When we say, a man has the title to . . . [property], we mean, he is the owner of it; and vice versa." (Internal quotation marks omitted.) *Warner* v. *Leslie-Elliott Constructors, Inc.*, 194 Conn. 129, 137, 479 A.2d 231 (1984). "Ownership is an essential incident of title and 'according to the commonly approved usage of the language' (General Statutes § 1-1), an owner is 'one that owns; one that has the legal or rightful title whether the possessor or not.' Webster, Third New International Dictionary." *Consolidated Diesel Electric Corp.* v. *Stamford*, 156 Conn. 33, 38, 238 A.2d 410 (1968); see *Julian* v. *Liberty Mutual Ins. Co.*, 43 Conn. App. 281, 284–85, 682 A.2d 611 (196) (dictionary definitions of title involve ownership of property).

A title opinion concerns the validity of title to real property. It is distinct from an abstract of title, "which

merely recites what the land records disclose without giving opinion or advice as to the legal effect of what is found . . . ." (Internal quotation marks omitted.) *Grievance Committee* v. *Payne*, 128 Conn. 325, 331, 22 A.2d 623 (1941).[11] Nonlawyers are forbidden " 'from rendering any oral or written opinions as to the validity or invalidity of titles to real estate . . . .' " Id., 328.

Numerous authorities have provided general descriptions and examples of title opinions. "[T]he opinion should be a plain statement of what appears in more cryptic form on the examiner's work-sheet. . . . It should show the party for whom the report is made, the period covered by the examination, whether made from an accompanying abstract . . . or from the original records aided by an identified abstract or search-sheet. It should not mention every irregularity but only those which destroy or detract from marketability, and those which indicate more than ordinary business risk. However, a marketable title is all that the client can usually insist upon and is just what he will expect if versed in real property transactions." 4 American Law of Property (1952) § 18.99, p. 847; see also General Statutes § 47-33b; N. North & D. Van Buren, Real Estate Titles and Conveyancing (Rev. Ed. 1940) pp. 197–203; G. Warvelle, A Practical Treatise on Abstracts and Examinations of Title to Real Property (1883) pp. 558–61.[12]

---

[11] "The difference between an abstract of title, with a certificate of search of records and investigation, and a statement setting forth an opinion of the validity of title to such real estate is clearly stated by Thompson on Abstracts and Titles [(2d Ed.) §§] 209 and 810." *Land Title Abstract & Trust Co.* v. *Dworken*, 129 Ohio St. 23, 33, 193 N.E. 650 (1934).

[12] "The purpose of an examination of title is to secure for the attorney's client a title which is in fact marketable, even though marketability may not be determined from the land records, subject to no other encumbrances than those expressly allowed by the client's contract. Objections to the marketability of the title should be made only when irregularities or defects can reasonably be deemed to present a real and substantial probability of litigation or loss." Connecticut Bar Association, Connecticut Standards of Title (1999) § 1.1.

We in no way intend our brief review of the structure and content of a title opinion to be exhaustive. It is, however, sufficient for us to determine, as a matter of law, that the letter is not a title opinion or certificate within the meaning of § 52-584b. The letter does not give an opinion as to the validity or marketability of the title to the land. It was not written in conjunction with the transfer of the land. It was written subsequent to the plaintiff's having acquired the land from the Cudd estate. At the time they purchased the land, the plaintiff and her neighbor did not receive a certificate of title or a title opinion from the defendant.[13] The plaintiff and her neighbor purchased a title insurance policy on the property.

In 1984, the plaintiff and her neighbor represented to the Darien planning and zoning commission and to their neighbors, as well as to the association, that they were not seeking to divide their land for approval as building sites, but that they planned to maintain the property with an "attractive open view" and that the properties were to be considered annexations to their residential properties across the street. *Lunn* v. *Tokeneke Assn., Inc.*, supra, 227 Conn. 603–605. Atkinson did the job that he was retained to do, to partition the property as scenic annexes to the property of the plaintiff and her neighbor across the street. The letter was intended to gain the association's approval for the plaintiff and her neighbor to partition the land and was successful in that regard. For these reasons, we affirm the trial court's decision to grant the motion for summary judgment.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[13] Atkinson attested to those facts in an affidavit that the defendant submitted in support of its motion for summary judgment. The plaintiff did not submit an affidavit or evidence to challenge those facts.