HARSHAD GOHEL ET AL. *v.* ALLSTATE INSURANCE COMPANY ET AL.
(AC 19337)

Lavery, C. J., and Spear and Dupont, Js.

Argued February 23, 2000—officially released February 20, 2001

*James K. Smith,* for the appellants (plaintiffs).

*David J. McDonald,* for the appellee (named defendant).

*Opinion*

LAVERY, C. J. The plaintiffs, Harshad Gohel, Anil Gohel and Ketan Patel, appeal from the trial court's granting of the motion for summary judgment filed by

the defendant Allstate Insurance Company (Allstate).[1] On appeal, the plaintiffs claim that the court improperly concluded that their claims were barred by the operation of Public Acts 1993, No. 93-77, § 2 (e) (P.A. 93-77), codified as General Statutes § 38a-336 (g) (1).[2] We agree and reverse the judgment of the trial court.

The following facts are relevant to this appeal. On August 1, 1993, the plaintiffs were involved in an automobile accident with the defendant Brian Zullo on Main Street in Danbury. Each of the plaintiffs sustained physical injuries in the accident.

At the time of the accident, the plaintiffs were covered by a contract of automobile insurance issued by Allstate to Hasmukhrai Gohel on February 23, 1993, for the period of March 13, 1993, through September 13, 1993. The contract provided in relevant part: "Any legal action against Allstate must be brought within two years from the date of the accident."

The plaintiffs settled their claims against Zullo and exhausted the limits of his liability coverage, $40,000, on April 8, 1994. On July 8, 1994, the plaintiffs filed a written claim with Allstate for benefits under the underinsured motorists coverage section of their contract. The plaintiffs then claimed such benefits in an

---

[1] In addition to Allstate, the plaintiffs' complaint included as defendants American Fidelity Assurance Company and Brian Zullo. Before argument in this court, the plaintiffs settled with Zullo and withdrew their claims against American Fidelity Assurance Company. Unless otherwise indicated, we refer in this opinion to Allstate as the defendant.

[2] Public Acts 1993, No. 93-77, entitled, "An Act Concerning Uninsured and Underinsured Motorists Insurance Coverage," provides in relevant part:

"Sec. 2. Section 38a-336 of the general statutes is repealed and the following is substituted in lieu thereof . . . .

"(e) No insurance company doing business in this state may limit the time within which any suit may be brought against it . . . on the uninsured or underinsured motorist provisions of a motor vehicle policy to a period of less than three years from the date of accident . . . ."

"Sec. 4. This act shall take effect from its passage."

action they brought against Allstate on December 3, 1997.

On April 13, 1998, Allstate filed a motion for summary judgment, asserting that the plaintiffs' claims were barred "by the statute of limitation as set out in Public Act 93-77 and codified as . . . General Statutes [§] 38a-336 (g)." On February 8, 1999, the court, without a written memorandum of decision, rendered summary judgment in favor of Allstate, ruling in its order, "There is no issue of material fact that the [plaintiffs'] claim is time barred by operation of [§ 38a-336 (g)]." This appeal followed.

I

The plaintiffs claim that the court improperly concluded that their claim was barred by operation of § 38a-336 (g). We agree.

"Our standard of review of a trial court's decision to grant a motion for summary judgment is well established. *Zichichi* v. *Middlesex Memorial Hospital*, 204 Conn. 399, 402, 528 A.2d 805 (1987). Practice Book § [17-49] requires that judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A material fact is a fact that will make a difference in the result of the case. See *Hammer* v. *Lumberman's Mutual Casualty Co.*, 214 Conn. 573, 578, 573 A.2d 699 (1990). The facts at issue are those alleged in the pleadings. See *Plouffe* v. *New York, N.H. & H.R. Co.*, 160 Conn. 482, 489, 280 A.2d 359 (1971). The party seeking summary judgment has the burden of showing the absence of any genuine issue as to all material facts, which, under applicable principles of substantive law, entitle him to a judgment as a matter of law. *D.H.R. Construction Co.* v. *Donnelly*, 180 Conn. 430, 434, 429 A.2d 908 (1980). The party opposing such

a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts. . . . *Connell* v. *Colwell*, 214 Conn. 242, 246–47, 571 A.2d 116 (1990). A motion for summary judgment is properly granted if it raises at least one legally sufficient defense that would bar the plaintiff's claim and involves no triable issue of fact. *Perille* v. *Raybestos-Manhattan-Europe, Inc.*, 196 Conn. 529, 543, 494 A.2d 555 (1985)." (Citations omitted; internal quotation marks omitted.) *Lunn* v. *Cummings & Lockwood*, 56 Conn. App. 363, 369–70, 743 A.2d 653 (2000); *Beebe* v. *East Hartford*, 48 Conn. App. 60, 64, 708 A.2d 231 (1998).

"Statutory construction is a question of law and therefore our review is plenary. . . . *Mack* v. *LaValley*, 55 Conn. App. 150, 165, 738 A.2d 718, cert. denied, 251 Conn. 928, 742 A.2d 363 (1999). The process of statutory interpretation involves a reasoned search for the intention of the legislature. *Frillici* v. *Westport*, 231 Conn. 418, 431, 650 A.2d 557 (1994). In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of this case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *Lunn* v. *Cummings & Lockwood*, supra, 56 Conn. App. 371; see also *United Illuminating Co.* v. *New Haven*, 240 Conn. 422, 431, 692 A.2d 742 (1997).

Public Act 93-77 was approved on May 20, 1993, to take effect on its passage. The legislative history of P.A. 93-77 indicates that it was enacted with the express purpose of repairing a perceived flaw in the legislative scheme concerning the timing for filing claims for uninsured motorist or underinsured motorist coverage. That flaw had been exposed by the Supreme Court in its decision in *McGlinchey* v. *Aetna Casualty & Surety Co.*, 224 Conn. 133, 617 A.2d 445 (1992).

In *McGlinchey*, the plaintiff exhausted the limits of the tortfeasor's liability insurance more than two years after the date of the accident. Id., 134, 135 n.3. The plaintiff thereafter filed a claim with her insurer for benefits under the uninsured motorists coverage section of her policy. The plaintiff claimed that she had waited until she had exhausted the tortfeasor's insurance before filing the claim with her insurer because of the Supreme Court's holding in *Continental Ins. Co.* v. *Cebe-Habersky*, 214 Conn. 209, 212–13, 571 A.2d 104 (1990). *McGlinchey* v. *Aetna Casualty & Surety Co.*, supra, 138–39. In *Continental Ins. Co.*, the Supreme Court held that "General Statutes § 38-175c (b) (1) [now § 38a-336 (b)] obligates insurance companies to pay on a policy's uninsured motorist coverage only *after* the limits of liability under all bodily injury bonds or insurance policies applicable at the time of the accident have been exhausted by payment of judgments or settlements . . . ." (Internal quotation marks omitted; emphasis added.) *Continental Ins. Co.* v. *Cebe-Habersky*, supra, 212.

The court in *McGlinchey*, while agreeing that *Continental Ins. Co.* required the plaintiff to liquidate her claim against the tortfeasor before claiming under her uninsured motorist coverage, disagreed with the plaintiff's contention that this requirement permitted her to wait until she had liquidated her claim against the tortfeasor before bringing her claim for arbitration

under the insurance contract, notwithstanding the contract provision that all legal action be brought within two years from the date of the accident. *McGlinchey* v. *Aetna Casualty & Surety Co.*, supra, 224 Conn. 138–40.

The practical effect of the *McGlinchey* decision was that, if it took longer than two years from the date of the accident for a claimant to exhaust the tortfeasor's insurance, the claimant no longer had access to his or her uninsured or underinsured motorist coverage. Indeed, one might speculate that such a rule created a financial incentive for insurance companies to delay the settlement of claims against the tortfeasor's liability coverage as long as possible to reduce the likelihood of a subsequent successful claim against an insured's uninsured motorist coverage. That type of behavior, taken to its logical conclusion, could render worthless an automobile owner's uninsured motorist coverage. It was that perceived inequity in the statutory scheme that the legislature sought to remedy by the passage of P.A. 93-77.

The fact that the legislature had the *McGlinchey* holding in mind as it considered P.A. 93-77 is demonstrated both by the text of the statute and the legislature's debates on the act. Answering another legislator's query, Representative Cameron C. Staples, the proponent of that provision of P.A. 93-77, explained: "Currently, under law, there is a two year limitation within which a claim may be brought. That corresponds to the statute of limitations period for bringing claims that allege a personal injury.

"The problem arises that with a statute of limitations and permissible period of time for bringing a claim . . . both expiring . . . within the same period of time, you may not know at the time that you have to bring [the] claim . . . that you are in fact in a situation where

there's underinsured motorist coverage [that] needs to be claimed.

"So this extends beyond the time period within which the suit may be brought, the time period that you may bring a claim under your underinsured or uninsured motorist provisions. It's intended to prevent a situation where you are required to bring two actions at the same time by claiming on your underinsured motorist coverage before you know whether in fact you need to do that, before you've exhausted the limits of other liability coverage." 36 H.R. Proc. Pt. 8, 1993 Sess., pp. 2751–52.

Representative Staples went on to summarize the new limitation on the time for bringing claims under P.A. 93-77: "[T]hree years after the date of the accident, there needs to be notice provided. . . . [T]he insurance company still needs to be notified within three years in writing that there's the possibility that a claim will be brought for underinsured motorist coverage and then, after that notice, there needs to be action brought within 180 days of the exhaustion of the limits of liability. So the insurance company will receive notice within three years that there may be an action brought." Id., p. 2752.

With respect to the impact of the enactment of the bill on existing insurance policies, Representative Staples stated: "[I]f a contract provides for a period of time less than the three years which is permissible under this statute . . . the . . . provision that is less than three years, would . . . be invalid and we would resort to the six year statute of limitations for regular contract actions in those cases." Id., pp. 2753–54.

It is clear, therefore, from the foregoing recitation, that the chief proponent of P.A. 93-77 in the General Assembly considered the type of case with which we are faced—an insurance policy issued prior to the enactment of P.A. 93-77 containing a provision limiting the

time for bringing a claim for underinsured motorist coverage to a period less than three years and a claim brought as a result of an accident that took place after the enactment of P.A. 93-77. It was Representative Staples' understanding that, with the enactment of P.A. 93-77, any such provision would be automatically invalidated by operation of the new statute. After that invalidation, the only remaining limitation would be the normal six year limitation period applicable to contract actions in general, since insurance policies are, after all, contracts. Insurance companies would, of course, be free to place three year limitation provisions in any subsequent renewal contracts made after the passage of P.A. 93-77.

That interpretation of P.A. 93-77, § 2 (e), is further supported by an examination of § 3 of the same public act.[3] The date referred to in § 3, December 8, 1992, coincides with the date of the Supreme Court's decision in *McGlinchey* v. *Aetna Casualty & Surety Co.*, supra, 224 Conn. 133. As the previously quoted portions from the debate on P.A. 93-77 in the General Assembly show, that was no coincidence. The whole purpose of the enactment of P.A. 93-77 was to overrule *McGlinchey* legislatively. Indeed, during the debate on the bill, Representative Dale W. Radcliffe posed the following question: "[T]he date, December 8, 1992, I take it that is the date of the *McGlinchey* decision in which the Supreme Court said that the contractual provision for bringing a suit within two years applied." 36 H.R. Proc., supra,

---

[3] Public Act 93-77, § 3, provides in relevant part: "Sec. 3. . . . No uninsured or underinsured motorist claim or action pending on December 8, 1992, or brought after said date and prior to the effective date of this act, in which . . . a final judgment has not been rendered prior to the effective date of this act, shall fail by reason of any contractual limitation in a motor vehicle insurance policy which limits the time within which such claim shall be submitted . . . or such action shall be commenced to a period of time less than that allowed under section 38a-336 of the general statutes, as amended by section 2 of this act. . . ."

p. 2743. Representative Staples responded, "[T]hat is true." Id., p. 2744.

"In construing a statute and determining the legislative intent, we may take judicial notice of the discussions on the floor of the General Assembly although such discussions are not controlling on statutory interpretation." (Internal quotation marks omitted.) *American Universal Ins. Co.* v. *DelGreco*, 205 Conn. 178, 195 n.8, 530 A.2d 171 (1987); see also *Manchester Sand & Gravel Co.* v. *South Windsor*, 203 Conn. 267, 276, 524 A.2d 621 (1987); *Verrastro* v. *Sivertsen*, 188 Conn. 213, 223 n.9, 448 A.2d 1344 (1982).

An additional consideration relevant here arises from the nature of the case before us as one in which the plaintiffs are seeking to avail themselves of underinsured motorist benefits from Allstate, for which Allstate was paid premiums. "[O]ur [under]insured motorist statute is remedial in nature and designed to protect people injured by [under]insured motorists. See, e.g., *Streitweiser* v. *Middlesex Mutual Assurance Co.*, [219 Conn. 371, 377, 593 A.2d 498 (1991)]; *American Universal Ins. Co.* v. *DelGreco*, [supra, 205 Conn. 197]; *Harvey* v. *Travelers Indemnity Co.*, [188 Conn. 245, 250–51, 449 A.2d 157 (1982)]." *Williams* v. *State Farm Mutual Automobile Ins. Co.*, 229 Conn. 359, 373, 641 A.2d 783 (1994). Our Supreme Court has stated that "remedial statutes should be construed liberally in favor of those whom the law is intended to protect." *Dysart Corp.* v. *Seaboard Surety Co.*, 240 Conn. 10, 18, 688 A.2d 306 (1997); see also *Doyle* v. *Metropolitan Property & Casualty Ins. Co.*, 252 Conn. 79, 93, 743 A.2d 156 (1999) (*Palmer, J.*, dissenting); *Cotto* v. *United Technologies Corp.*, 251 Conn. 1, 8–9, 738 A.2d 623 (1999).

The facts of this case indicate that the terms of the automobile insurance policy covering the plaintiffs and the timing of their loss have placed the plaintiffs in a

situation in which it is unclear what limitation period applies to their claim. Had they brought their claim prior to May 20, 1993, § 3 of P.A. 93-77 would have saved their claim from failing by virtue of the limitation period in their policy. Their loss, however, did not take place until August 1, 1993. Had they been insured under a contract of insurance issued after May 20, 1993, the effective date of P.A. 93-77, § 2 (e) would have required that the policy not contain the two year limitation period that their policy in fact contained. They were insured, however, under a contract issued on February 23, 1993, for an effective period of six months. They thus fall into a relatively small gap left by the General Assembly between the savings clause of § 3 and the new provision of § 2 of P.A. 93-77.

Because it is unclear from the text of P.A. 93-77 what the legislature meant to have happen to claims brought under insurance policies that contained the newly prohibited limitation period where the time when the claim was filed did not place it within the savings clause contained in P.A. 93-77, we turn to an examination of how this court and our Supreme Court have interpreted P.A. 93-77 in other cases.

We begin by reiterating the general legislative purpose behind the very existence of uninsured and underinsured motorist coverage. "The public policy established by the uninsured motorist statute is that every insured is entitled to recover for the damages he or she would have been able to recover if the uninsured motorist had maintained a policy of liability insurance. . . . [U]ninsured motorist coverage . . . is statutorily intended to provide the . . . equivalent of automobile liability coverage prescribed by [law] . . . . To achieve this purpose, no policy exclusions contrary to the statute of any of the . . . insureds are permissible since uninsured motorist coverage is intended by the statute to be uniform and standard motor vehicle accident lia-

bility insurance for the protection of such insureds thereunder as if the uninsured motorist had carried the minimum limits of an automobile liability policy. . . . The public policy embodied in these statutes favors indemnification of accident victims unless they are responsible for the accident." (Citations omitted; internal quotation marks omitted.) *Harvey* v. *Travelers Indemnity Co.*, supra, 188 Conn. 249–50; see also *Sandor* v. *New Hampshire Ins. Co.*, 241 Conn. 792, 800, 699 A.2d 96 (1997); *Smith* v. *Safeco Ins. Co. of America*, 225 Conn. 566, 573, 624 A.2d 892 (1993).

Our courts have also held that a similar purpose underlies underinsured motorist coverage, namely, to provide insurance protection to compensate for damages that would have been recoverable from the motorist at fault in an accident if that motorist had maintained an adequate policy of liability insurance. See *Orkney* v. *Hanover Ins. Co.*, 248 Conn. 195, 204–205, 727 A.2d 700 (1999); *Florestal* v. *Government Employees Ins. Co.*, 236 Conn. 299, 305–306, 673 A.2d 474 (1996); *Lash* v. *Aetna Casualty & Surety Co.*, 236 Conn. 318, 327, 673 A.2d 84 (1996).

Consistent with the similar purposes of the two types of coverage, our Supreme Court has "often held that statutes and regulations that apply to uninsured motorist coverage equally apply to underinsured motorist coverage." *Buell* v. *American Universal Ins. Co.*, 224 Conn. 766, 769 n.1, 621 A.2d 262 (1993); *Lumbermens Mutual Casualty Co.* v. *Huntley*, 223 Conn. 22, 28 n.9, 610 A.2d 1292 (1992); *General Accident Ins. Co.* v. *Wheeler*, 221 Conn. 206, 210–11, 603 A.2d 385 (1992); *Nationwide Ins. Co.* v. *Gode*, 187 Conn. 386, 399–400, 446 A.2d 1059 (1982), overruled on other grounds, *Covenant Ins. Co.* v. *Coon*, 200 Conn. 30, 36 n.6, 594 A.2d 977 (1991).

The first case to consider the impact of P.A. 93-77 on claims brought under policies containing the newly

banned limitation periods of less than three years was *Aetna Life & Casualty Co.* v. *Braccidiferro*, 34 Conn. App. 833, 643 A.2d 1305 (1994), cert. granted, 232 Conn. 901, 651 A.2d 743 (1995) (appeals withdrawn Sept. 1, 1995). In that case, this court stated that "the proponents intended that where, after the enactment of P.A. 93-77 . . . an insurer failed to rewrite a policy that provided a two year limitation before an underinsured motorist claim arose under the policy, the two year provision would be invalidated and a claim for underinsured motorist benefits would be time barred only by the usual statute of limitations for contract actions in this state, six years." Id., 842 n.6.

Allstate points to language in *Braccidiferro* in which this court stated that, in cases in which policies with the two year limitation would be involved in litigation prior to being rewritten to conform to the requirements of P.A. 93-77, "the three year limitation would be imposed upon the claim." Id., 842. Allstate thus argues in its brief that this court "construed P.A. 93-77 to require the substitution of the new three year limitation period into a previously negotiated contract containing a two year limitation period . . . ."

Allstate overstates the impact on this case of the quoted language from *Braccidiferro*. The quoted language that Allstate points to is mere dictum as applied to this case, for this court concluded in *Braccidiferro* that it was § 3 of P.A. 93-77 that was at issue in that case, whereas in this case it is § 2 (e) that is at issue. That distinction is particularly relevant because § 3 of P.A. 93-77 concerns the status of "claim[s] or action[s] pending on December 8, 1992, or brought after said date and prior to the effective date of this act . . . ." This court concluded that, because of the pending appeal, the claim brought by the insured in *Braccidiferro* still was pending as of the effective date of P.A. 93-77 and so § 3 applied. By contrast, in this case, there

is no question that there was no claim or action brought or pending prior to the effective date of the act for the simple reason that the accident giving rise to the present litigation did not occur until after the effective date of the act. Section 3 of P.A. 93-77 thus does not apply to this case.

That distinction, between § 3, which applied in the *Braccidiferro* case, and § 2 (e), which applies in this case, is quite important. Whereas § 3 provides that "[n]o . . . underinsured motorist claim or action . . . shall fail by reason of any contractual limitation in a motor vehicle insurance policy which limits the time within which such . . . action shall be commenced to a period of time less than that allowed . . . by section 2 of this act," § 2 (e) provides that "[n]o *insurance company* . . . may limit the time within which any suit may be brought . . . to a period of less than three years from the date of accident . . . ." (Emphasis added.) The distinction between the two provisions is that the former directs trial courts (no action shall fail) whereas the latter directs insurance companies (no insurance company may limit the time). Thus, when this court stated in *Braccidiferro* that the three year limitation would be imposed on the claim; id.; it meant so only with respect to claims as to which § 3 applies.

Thus, because the two sections were written with different audiences in mind—§ 3 being directed to the courts and § 2 (e) being directed to insurance companies—we decline to extend the quoted language from *Braccidiferro* beyond the section of P.A. 93-77 with which the court was concerned in that case.

That distinction between §§ 2 and 3 of P.A. 93-77 is further supported by the Supreme Court's holding in *Serrano* v. *Aetna Ins. Co.*, 233 Conn. 437, 664 A.2d 279 (1995). In that case, our Supreme Court stated: "After we concluded, in *McGlinchey* . . . that [the claim was]

barred by the two year limitation period, the legislature enacted § 3 of P.A. 93-77, which precludes an insurer from enforcing, for the category of cases enumerated therein, any contractual limitation period less than that allowed under § 38a-336, as amended by § 2 of P.A. 93-77." Id., 443 n.7. The Supreme Court's explicit language that § 2 "precludes an insurer from enforcing" the shorter limitation quite clearly indicates that it did not construe § 2 as actually altering insurance contracts or substituting new language for the newly prohibited limitation language. That statement by the Supreme Court thus clearly indicates that the legislature, in enacting P.A. 93-77, did not create a statute with retrospective application, as Allstate alleges, but merely created a statute that rendered inoperative, as of the effective date of the statute, any policy provisions inconsistent with the statute's requirements.

Because we disagree with the trial court's conclusion that P.A. 93-77, § 2, effected the substitution of a three year statute of limitation in the automobile insurance policy covering the plaintiff for the then recently prohibited two year limitation period for filing a claim, we agree with the plaintiffs that the court improperly determined that their claim was barred by the operation of § 38a-336 (g).

II

Having determined that the court improperly concluded that the plaintiffs' claim was barred by operation of § 38a-336 (g), we next must address the issue of what, if any, limitation period properly applies to the plaintiffs' claim against Allstate and whether they brought their action against Allstate within that period.

Having concluded in part I of this opinion that P.A. 93-77 "precludes an insurer from enforcing, for the category of cases enumerated therein, any contractual limitation period less than that allowed under § 38a-336, as

amended by § 2 of P.A. 93-77"; id.; the limitation period (two years) contained in the plaintiffs' automobile insurance policy has been rendered unenforceable by operation of P.A. 93-77. That being so, the only remaining statute of limitation applicable to this case is General Statutes § 52-576 (a).[4]

Both this court and our Supreme Court have held that, in the absence of some other controlling statutory or contractual provision, § 52-576 (a) is the applicable statute of limitation for bringing claims under insurance policies. See *Bayusik* v. *Nationwide Mutual Ins. Co.*, 233 Conn. 474, 485, 659 A.2d 1188 (1995); *Tolbert* v. *Connecticut General Life Ins. Co.*, 58 Conn. App. 694, 698, 755 A.2d 293 (2000); *Consiglio* v. *Transamerica Ins. Group*, 55 Conn. App. 134, 137, 737 A.2d 969 (1999); *Polizos* v. *Nationwide Mutual Ins. Co.*, 54 Conn. App. 724, 728, 737 A.2d 946, cert. granted on other grounds, 251 Conn. 916, 740 A.2d 865 (1999); *Aetna Life & Casualty Co.* v. *Braccidiferro*, supra, 34 Conn. App. 851; *Wynn* v. *Metropolitan Property & Casualty Ins. Co.*, 30 Conn. App. 803, 807, 623 A.2d 66 (1993), aff'd, 228 Conn. 436, 635 A.2d 814 (1994). The undisputed facts in the record disclose that the accident that gave rise to this litigation occurred on August 1, 1993, and that this action was brought against Allstate on December 3, 1997, a date clearly within the six year limitation period set forth above.

Because the only statute of limitation applicable to the plaintiffs' claim is that set forth in § 52-576 (a), namely, six years, and because the plaintiffs brought suit on that claim within six years of the date of the accident, we reverse the judgment of the court granting Allstate's motion for summary judgment.

---

[4] General Statutes § 52-576 (a) provides in relevant part: "No action . . . on any contract in writing, shall be brought but within six years after the right of action accrues . . . ."

The judgment is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

In this opinion DUPONT, J., concurred.

SPEAR, J., dissenting. I would affirm the judgment of the trial court. Our Supreme Court has declared that § 2 (e) of Public Acts 1993, No. 93-77 (P.A. 93-77), does not apply retroactively. *Bayusik* v. *Nationwide Mutual Ins. Co.*, 233 Conn. 474, 483–85, 659 A.2d 1188 (1995). Relying on *Bayusik*, we held, in a case similar to this one, that the two year statute of limitations contained in the insurance contract barred the underinsured motorist claim.[1] *Bilodeau* v. *Aetna Casualty & Surety Co.*, 44 Conn. App. 698, 691 A.2d 1115, cert. granted, 241 Conn. 907, 704 A.2d 795 (1997) (appeal withdrawn December 10, 1997).

In *Bayusik*, after determining that the case was governed by § 3 of P.A. 93-77, the Supreme Court refused to apply § 2 (e) of P.A. 93-77. *Bayusik* v. *Nationwide Mutual Ins. Co.*, supra, 233 Conn. 482–85. The court was "unpersuaded that § 2 (e) of P.A. 93-77, which sets forth the minimum limitation period for insurance policies under [General Statutes] § 38a-336, has retrospective applicability. [W]e have uniformly interpreted [General Statutes] § 55-3 as a rule of presumed legislative intent that statutes affecting substantive rights shall apply prospectively only. . . . The legislature only rebuts this presumption when it clearly and unequivocally expresses its intent that the legislation shall apply retrospectively. . . . The retrospective application of § 2 (e) of P.A. 93-77 would alter the material terms of existing policies, thereby affecting substantive contractual rights and obligations that already had been settled under the express terms of those policies. . . .

---

[1] The defendant here, Allstate Insurance Company, claimed the benefit of the two year contractual limitation period as well as the three year limitation set out in P.A. 93-77.

Although the legislature has the authority, within constitutional limits, to modify existing contractual relationships . . . we conclude that the legislature did not intend to achieve such a result under § 2 (e) of P.A. 93-77.

"Neither the language nor the legislative history of § 2 (e) of P.A. 93-77 supports the conclusion that the legislature intended it to have retrospective application. Unlike § 3 of P.A. 93-77, which by its express terms applies retroactively, § 2 (e) is devoid of language suggesting that it should likewise be applied to modify the terms of contracts already in existence. Indeed, the clarity with which the legislature manifested its intention that § 3 of P.A. 93-77 be given retrospective application strongly suggests that the legislature would have been explicit had it intended § 2 (e) to be similarly applied." (Citations omitted; internal quotation marks omitted.) *Bayusik* v. *Nationwide Mutual Ins. Co.*, supra, 233 Conn. 483–84.

After *Bayusik* was decided, we were presented with the question of whether a plaintiff's claim for underinsured motorist benefits was barred by the two year time limit specified in the insurance policy where she brought suit on an underinsured motorist claim after the passage on May 20, 1993, of P.A. 93-77, but more than three years after the accident. *Bilodeau* v. *Aetna Casualty & Surety Co.*, supra, 44 Conn. App. 699. In *Bilodeau*, the insurance policy required that any underinsured motorist claim be brought within two years from the date of the accident. Because that was not done, the trial court rendered summary judgment in favor of the defendant insurer, determining that the plaintiff's claim was time barred by the contractual limitation period. Id. In affirming the judgment of the trial court, we rejected the plaintiff's claim that § 2 (e) of P.A. 93-77 applied retrospectively "to invalidate all two year contractual limitations in claims brought after May 20, 1993 . . . ." Id., 701. We reviewed the language

of our Supreme Court in *Bayusik*, which stated that § 2 (e) does not apply retroactively, and we concluded that "[i]f the legislature intended to invalidate all two year contractual limitations, it would have done so explicitly. . . . Because the plaintiff's claim is not governed by P.A. 93-77, § 3, and because § 2 (e) does not apply to retroactively invalidate the contractual two year time limit, the plaintiff cannot avail herself of the six year statute of limitations."[2] (Citation omitted.) Id., 702.

The only difference between this case and *Bilodeau* is that in *Bilodeau*, the accident occurred before the passage of P.A. 93-77, and here, the accident occurred after the passage of P.A. 93-77. That difference is irrelevant because the policies at issue were both in force prior to the passage of P.A. 93-77, and the plaintiffs' actions and the insurers' motions for summary judgment based on the contractual limitation periods were filed after the effective date of that act. Because the appeal was withdrawn after certification was granted in *Bilodeau*, the issue of whether the two year contractual limitation period remains valid under those circumstances has not been decided by our Supreme Court. Unless and until the Supreme Court decides otherwise, we should follow our precedent.

Moreover, I do not view an affirmance here as inequitable or harsh for two reasons. First, the plaintiffs had the benefit of the Supreme Court's suggestion that "[e]nforcement of the two year time limitation does not impose an insuperable burden on an insured, because an action to recover pursuant to the uninsured motorists insurance policy can be timely filed even while

---

[2] I do not understand the majority's position that, although § 2 (e) of P.A. 93-77 does not apply retrospectively, it does render "inoperative" contractual limitation periods that are "inconsistent with the statute's requirements." Eliminating the contractual limitation period is a retroactive application of § 2 (e).

claims against the tortfeasor are then being pursued in another forum. *Continental Ins. Co.* v. *Cebe-Habersky,* 214 Conn. 209, 571 A.2d 104 (1990), did not hold that two such lawsuits cannot be initiated simultaneously." *Hotkowski* v. *Aetna Life & Casualty Co.,* 224 Conn. 145, 150 n.6, 617 A.2d 451 (1992). Second, the plaintiffs exhausted the tortfeasor's liability coverage on April 8, 1994. That left almost fifteen months of the two years provided for by the policy within which to bring an action claiming underinsured motorist benefits. By waiting until 1997 to bring such an action, the plaintiffs created the problem from which they now seek relief.

Accordingly, I respectfully dissent.