******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# DANIEL FARIAS *v.* ESAUL RODRIGUEZ ET AL.
## (AC 47710)

Suarez, Seeley and Wilson, Js.

*Syllabus*

The plaintiff, who had been employed as a bartender at restaurants owned and operated by the defendants, appealed from the trial court's judgment granting the defendants' motion to strike his putative class action complaint, which alleged, inter alia, violations of state minimum fair wage regulations (§ 31-62-E3 et seq.) in effect in 2015. *Held*:

The trial court properly granted the defendants' motion to strike that count of the plaintiff's complaint that alleged that the applicable statute (§ 31-68 (a)) gave rise to a private right of action for violations by employers of the recordkeeping requirements in § 31-62-E3 of the regulations, as this court twice previously determined that no private right of action exists for violations of that regulation.

The trial court correctly concluded that the plaintiff's complaint was legally insufficient as a matter of law because it was not premised on the applicable state regulation (§ 31-60-2), as required under the legislature's amendment (P.A. 22-134) to the statute (§ 31-60) governing actions for violations of wage laws.

Contrary to the plaintiff's claim that the trial court applied P.A. 22-134 retroactively to take away his substantive rights under the 2015 state wage regulations that had previously been in effect, this court concluded that P.A. 22-134 is prospective and did not change the nature of causes of action for a fair minimum wage but, rather, required only that claims filed after September 24, 2022, as were the plaintiff's claims, be adjudicated pursuant to the updated regulatory scheme, namely, § 31-60-2 of the regulations, and the legislature did not create any exceptions in § 31-60 (d) (4) for causes of action that had accrued but were not commenced within the mandatory time frame delineated therein.

The trial court correctly determined that any retroactive effect of P.A. 22-134 on the plaintiff's statutory cause of action did not violate his federal and state constitutional rights to due process, as he did not have a vested property right in his cause of action.

Argued November 13, 2025—officially released March 31, 2026

*Procedural History*

Action to recover damages for the defendants' alleged violations of minimum wage laws and regulations, and for other relief, brought to the Superior Court in the judicial district of Hartford and transferred to the Complex Litigation Docket, where the court, *Noble, J.*, granted the

defendants' motion to strike, and the plaintiff appealed to this court; thereafter, the court, *Noble, J.*, granted the plaintiff's motion for judgment, and the plaintiff filed an amended appeal; subsequently, this court dismissed the plaintiff's original appeal. *Affirmed*.

*Richard E. Hayber*, for the appellant (plaintiff).

*James T. Shearin*, with whom were *Dana M. Hrelic* and, on the brief, *Ryan A. O'Donnell*, for the appellees (defendants).

*Opinion*

SUAREZ, J. The plaintiff, Daniel Farias, brought this putative class action[1] complaint, individually and on behalf of others who were similarly situated as employees of Puerto Vallarta restaurants (Puerto Vallarta), alleging violations of Connecticut wage laws and regulations; see General Statutes § 31-60;[2] see also Regs., Conn. State Agencies § 31-62-E1 et seq. (2015) (repealed September 24, 2020).[3] Specifically, the plaintiff alleged that the

[1] Prior to certification as a class pursuant to Practice Book § 9-9, a complaint alleging claims on behalf of a class is commonly referred to as a "putative" class action. See, e.g., *Del Rio* v. *Amazon.com Services, Inc.*, 354 Conn. 151, 152, 349 A.3d 570 (2026).

[2] General Statutes § 31-60 provides in relevant part: "(b) The Labor Commissioner shall adopt such regulations, in accordance with the provisions of chapter 54, as may be appropriate to carry out the purposes of this part. Such regulations . . . shall recognize, as part of the minimum fair wage, gratuities in an amount (1) equal to twenty-nine and three-tenths per cent, and . . . effective January 1, 2015, and ending on June 30, 2019, equal to thirty-six and eight-tenths per cent of the minimum fair wage per hour for persons, other than bartenders, who are employed in the hotel and restaurant industry, including a hotel restaurant, who customarily and regularly receive gratuities . . . .

"(d) . . . (4) Notwithstanding any other law or regulation, any claim brought under this subsection, section 31-68 as it relates to gratuities as part of the minimum wage or section 31-62-E3 of the regulations of Connecticut state agencies filed after September 24, 2022, shall be adjudicated, solely, under section 31-60-2 of the regulations of Connecticut state agencies effective on September 24, 2020, and any amendments thereto. . . ."

[3] The plaintiff's complaint alleges violations of only §§ 31-62-E3 (old E3) and 31-62-E4 (old E4) of the 2015 Regulations of Connecticut State

defendants violated **(1)** §31-62-E3[4] **(old E3)** of the 2015 Regulations of Connecticut State Agencies **(2015 regulations)** by, inter alia, failing to properly record the amount claimed as a percentage of the minimum fair wage **(tip credit)**[5] they would otherwise be required to pay with respect to each server, and **(2)** §31-62-E4[6] **(old E4)** of the 2015 regulations by improperly deducting a tip credit from his earnings and paying him and other similarly situated employees less than the minimum wage for the performance of "nonservice" work.[7] The trial court

Agencies. Following the practice of the parties and the trial court, we refer to the plaintiff's claims in counts one and two of his operative complaint as alleging violations of "old E3" and "old E4," respectively.

[4] Section 31-62-E3 of the Regulations of Connecticut State Agencies (2015) (repealed September 24, 2020) provided in relevant part: "Gratuities shall be recognized as constituting a part of the minimum fair wage when all of the following provisions are complied with . . . (b) the amount received in gratuities claimed as credit for part of the minimum fair wage shall be recorded on a weekly basis as a separate item in the wage record even though payment is made more frequently, and (c) each employer claiming credit for gratuities as part of the minimum fair wage paid to any employee shall obtain weekly a statement signed by the employee attesting that he has received in gratuities the amount claimed as credit for part of the minimum fair wage. Such statement shall contain the week ending date of the payroll week for which credit is claimed. . . ."

[5] "A tip credit allows employers [to] take a credit for tips received by a tipped employee for up to a stated percentage or portion of the minimum wage. J. Lockhart, Annot., Tips as Wages for Purposes of Federal Fair Labor Standards Act, 46 A.L.R. Fed. 2d 23, 40, §2 (2010)." (Internal quotation marks omitted.) *Rodriguez* v. *Kaiaffa, LLC*, 337 Conn. 248, 259 n.11, 253 A.3d 13 (2020).

[6] Section 31-62-E4 of the Regulations of Connecticut State Agencies (2015), which was repealed effective September 24, 2020, provided: "If an employee performs both service and non-service duties, and the time spent on each is definitely segregated and so recorded, the allowance for gratuities as permitted as part of the minimum fair wage may be applied to the hours worked in the service category. If an employee performs both service and non-service duties and the time spent on each cannot be definitely segregated and so recorded, or is not definitely segregated and so recorded, no allowances for gratuities may be applied as part of the minimum fair wage."

[7] Effective September 24, 2020, §§31-60-2 and 31-62-E3 of the Regulations of Connecticut State Agencies (regulations) were each amended to provide in relevant part that "the amount received in gratuities claimed as credit for part of the minimum fair wage shall be recorded on a daily,

granted the motion to strike filed by the defendants, Esaul Rodriguez, Juan Carlos Rodriguez, Puerto Vallarta, LLC, Puerto Vallarta Group, LLC, Puerto Vallarta Danbury, LLC, Puerto Vallarta Fairfield, LLC, Puerto Vallarta Orange, LLC, Juan Rodriguez, LLC, and Rodriguez Enterprises, LLC,[8] and rendered judgment thereon. On appeal, the plaintiff claims, inter alia,[9]

weekly, or bi-weekly basis in a wage record, even though payment is made more frequently . . . .'' See Regs., Conn. State Agencies §§ 31-60-2 (2) and 31-62-E3 (b).

Also effective September 24, 2020, § 31-62-E3a of the Regulations of Connecticut State Agencies was added. Section 31-62-E3a of the regulations changed an employer's obligation to segregate an employee's time for nonservice duties to provide that such time must be segregated only when a service employee performs nonservice employee duties for ''two hours or more,'' or ''[f]or more than 20 percent of the service employee's shift, whichever is less . . . .'' Regs., Conn. State Agencies § 31-62-E3a (a) (1) and (2).

The plaintiff does not dispute that he has not alleged any violations of the 2020 version of E3 contained in the regulations (new E3) or ''new E4,'' the latter of which is now codified at § 31-62-E3a of the regulations. See footnote 3 of this opinion.

[8] The individual defendants are managing members and/or co-owners of the various limited liability companies, which operate under the name Puerto Vallarta. For convenience, we refer to all defendants collectively as the defendants, and to Puerto Vallarta, LLC, Puerto Vallarta Group, LLC, Puerto Vallarta Danbury, LLC, Puerto Vallarta Fairfield, LLC, Puerto Vallarta Orange, LLC, Juan Rodriguez, LLC, and Rodriguez Enterprises, LLC, collectively as the defendant entities. We refer to Esaul Rodriguez and Juan Carlos Rodriguez, collectively, as the individual defendants.

[9] The plaintiff also claims that the trial court incorrectly concluded that (1) his ''follow-on'' class action does not relate back to the filing of *Reyes* v. *Rodriguez*, Superior Court, judicial district of Hartford, Complex Litigation Docket, Docket No. CV-21-6140915-S, a prior class action against the defendants, even though that case did not result in the denial of class certification, and (2) Governor Ned Lamont's Executive Order No. 7G expired on March 1, 2021, by operation of Governor Lamont's Executive Order No. 10A, rather than on May 20, 2021.

In his tolling claims, the plaintiff asserts that the United States Supreme Court's decision in *American Pipe & Construction Co.* v. *Utah*, 414 U.S. 538, 94 S. Ct. 756, 38 L. Ed. 2d 713 (1974), which was adopted by our Supreme Court in *Grimes* v. *Housing Authority*, 242 Conn. 236, 244, 698 A.2d 302 (1997), together with Governor Lamont's executive orders, tolled the applicable two year statute of limitations in General Statutes § 52-596.

that (1) the court incorrectly determined that General-Statutes § 31-68[10] does not provide a private cause of action for a recordkeeping violation under old E3, (2) No. 22-134 of the 2022 Public Acts (P.A. 22-134)[11] was not intended to retroactively take away his substantive cause of action under the Connecticut Minimum Wage Act (minimum wage act), General Statutes § 31-58 et seq., and (3) the court incorrectly determined that applying P.A. 22-134 to his claims, which the plaintiff asserts retroactively changed his substantive rights, did not violate

---

We need not address these claims, however, in light of our dispositive conclusion that § 31-60 (d) (4) applies to the plaintiff's claims and that the plaintiff did not comply with its requirements. See General Statutes § 31-60 (d) (4) ("any claim brought under this subsection, section 31-68 as it relates to gratuities as part of the minimum wage or section 31-62-E3 of the regulations of Connecticut state agencies filed after September 24, 2022, shall be adjudicated, solely, under section 31-60-2 of the regulations of Connecticut state agencies effective on September 24, 2020, and any amendments thereto"). Thus, even if we were to agree with the plaintiff's tolling claims, the plaintiff still would not prevail because, pursuant to § 31-60 (d) (4), any claims filed after September 24, 2022, must be adjudicated solely under § 31-60-2 of the regulations, and, in the present case, the plaintiff alleged violations of only old E3 and old E4.

[10] General Statutes § 31-68 (a) (1) provides: "If any employee is paid by his or her employer less than the minimum fair wage or overtime wage to which he or she is entitled under sections 31-58, 31-59 and 31-60 or by virtue of a minimum fair wage order he or she shall recover, in a civil action, (A) twice the full amount of such minimum wage or overtime wage less any amount actually paid to him or her by the employer, with costs and such reasonable attorney's fees as may be allowed by the court, or (B) if the employer establishes that the employer had a good faith belief that the underpayment of such wages was in compliance with the law, the full amount of such minimum wage or overtime wage less any amount actually paid to him or her by the employer, with costs and such reasonable attorney's fees as may be allowed by the court."

[11] In May, 2022, the legislature enacted P.A. 22-134, titled, "An Act Concerning Employee Record Keeping," which includes the provision relevant to this appeal. Public Act 22-134 amended § 31-60 (d) by adding subdivision (4), which provides: "Notwithstanding any other law or regulation, any claim brought under this subsection, section 31-68 as it relates to gratuities as part of the minimum wage or section 31-62-E3 of the regulations of Connecticut state agencies filed after September 24, 2022, shall be adjudicated, solely, under section 31-60-2 of the regulations of Connecticut state agencies effective on September 24, 2020, and any amendments thereto."

due process. We disagree with the plaintiff's claims and, accordingly, affirm the judgment of the court.

The following facts, as alleged in the plaintiff's complaint,[12] and procedural history are relevant to our resolution of this appeal. The plaintiff was employed by Puerto Vallarta at its Orange and Fairfield locations as a bartender from 2011 until 2022. The plaintiff alleged that the individual defendants are co-owners of all Puerto Vallarta restaurants in Connecticut and that the defendant entities operate several Puerto Vallarta locations in Connecticut. The plaintiff further alleged that the defendants function as a single enterprise and collectively have the status of a single employer of the plaintiff pursuant to Connecticut wage laws. At all relevant times, the defendants maintained a common practice at all Puerto Vallarta locations of taking the full tip credit against the wages of their servers and bartenders. Accordingly, the defendants paid their servers $6.38 per hour, and their bartenders $8.23 per hour, rather than the full minimum wage.[13] The defendants assigned the plaintiff, and other similarly situated servers and bartenders, "nonservice duties," which included, but were not limited to, setting up the restaurant before it was opened to the public, and " 'side work,' " which they were required to perform during their shifts and after they had finished their shifts. This side work included, inter alia, general cleaning and stocking duties, brewing coffee, cleaning iced tea containers, and filling ice bins, among other tasks. The side work tasks were performed for the restaurant generally and were not specific to the servers' or the bartenders' own customers.

---

[12] "For purposes of reviewing a motion to strike, we take the facts alleged in the complaint as true." (Internal quotation marks omitted.) *Ferrua* v. *Napoli Foods, Inc.*, 237 Conn. App. 23, 25 n.5, 349 A.3d 620 (2025), petition for cert. filed (Conn. March 6, 2026) (No. 250349).

[13] During the alleged claim period of August 21, 2018, through September 23, 2020, a "minimum fair wage" was defined in § 31-58 (i) (1) as not less than $10.10 per hour effective January 1, 2017; as not less than $11 per hour effective October 1, 2019; and as not less than $12 per hour effective September 1, 2020.

On December 6, 2022,[14] the plaintiff commenced the present putative class action against the defendants, on behalf of himself and other Puerto Vallarta servers and bartenders employed during the alleged class period, for violations of Connecticut wage laws and regulations.[15] The plaintiff's complaint contains two counts. In count one, the plaintiff alleged that the defendants violated old E3 by failing to record properly the amount claimed as credit in the wage record for him and other servers on a weekly basis, and by failing to obtain "tip statements" on a weekly basis confirming that the plaintiff received sufficient tips to satisfy the tip credit that the defendants took each week. In the second count, the plaintiff alleged that the defendants violated old E4 by failing to segregate his and other servers' and bartenders' service and nonservice duties. The plaintiff alleged that, by failing to segregate these nonservice duties pursuant to old E4, they were underpaid in violation of Connecticut's "'tip credit'" laws. The plaintiff alleged an applicable claim period for his putative class action claims[16] under old E3 and old E4 of August 21, 2018, through September 23, 2020.

In April, 2023, the defendants filed a motion to strike both counts of the plaintiff's complaint pursuant to

[14] The plaintiff served the complaint on all named defendants on December 6, 2022, with the exception of Juan Carlos Rodriguez, who was served on December 7, 2022. Because this one day difference does not impact our analysis of the plaintiff's claims, we, like the trial court, use December 6, 2022, as the relevant date for purposes of the statute of limitations.

[15] The present case is the second putative class action brought against the defendants on behalf of servers and bartenders asserting class wide violations pursuant to old E3 and old E4. In 2021, Omar Reyes, a server at a Puerto Vallarta restaurant, commenced the first class action complaint, asserting substantially similar allegations against the defendants. See *Reyes* v. *Rodriguez*, Superior Court, judicial district of Hartford, Complex Litigation Docket, Docket No. CV-21-6140915-S. The *Reyes* action was withdrawn in June, 2022, after the parties reached a settlement. At the time *Reyes* was withdrawn, a motion for class certification pursuant to Practice Book §§ 9-7 and 9-8 had neither been filed nor ruled on by the court.

[16] It is not disputed that the plaintiff did not allege any individual claims in his complaint but, rather, alleged only putative class action claims.

Practice Book § 10-39,[17] together with an accompanying memorandum of law. The defendants contended, first, that the complaint failed to state a claim on which relief could be granted for violations of old E3 and old E4. Second, the defendants asserted that the plaintiff's claims were barred by the two year statutory limitation period set forth in General Statutes § 52-596.[18] Finally, the defendants argued that the plaintiff's old E3 claims should be stricken because the minimum wage act, as amended by P.A. 22-134, did not provide a private right of action with respect to those claims.

On April 19, 2023, the plaintiff filed a memorandum of law in opposition to the defendants' motion to strike, along with exhibits, including, inter alia, relevant legislative history and certain of Governor Lamont's executive orders, which were issued during the COVID-19 pandemic. The plaintiff argued, inter alia, that P.A. 22-134 should not be construed to retroactively change old E3 and old E4, and that doing so would constitute a taking of the class' vested property interest in its members' causes of action in violation of their due process rights. As to whether old E3 conferred a private right of action, the plaintiff asserted that the trial court should defer ruling on that issue because this court's decision in *Nettleton* v. *C & L Diners, LLC*, 219 Conn. App. 648, 296 A.3d 173 (2023), had, as of the time of the plaintiff's briefing before the trial court, not yet been released.[19] On April 28, 2023, the defendants filed a reply. On May 5, 2023, the plaintiff, with permission of the court, filed a surreply brief. On June 6, 2023, before oral argument on the defendants' motion to strike, *Nettleton* was released by this court. See id.

[17] Practice Book § 10-39 provides in relevant part: "(a) A motion to strike shall be used whenever any party wishes to contest: (1) the legal sufficiency of the allegations of any complaint, counterclaim or cross claim, or of any one or more counts thereof, to state a claim upon which relief can be granted . . . ."

[18] General Statutes § 52-596 provides in relevant part: "No action for the payment of remuneration for employment payable periodically shall be brought but within two years after the right of action accrues . . . ."

[19] In *Nettleton* v. *C & L Diners, LLC*, supra, 219 Conn. App. 653, one of the issues presented was whether § 31-68 (a) provides a private cause of action for a recordkeeping violation under old E3.

On June 26, 2023, the parties appeared before the court, *Noble, J.*, for oral argument.[20] On December 29, 2023, the court issued a memorandum of decision, in which it granted the motion to strike. As to count one, which alleged violations of old E3, the court concluded that it was bound by this court's decision in *Nettleton* v. *C & L Diners, LLC*, supra, 219 Conn. App. 678, which held that "the recordkeeping requirements in §31-62-E3 (b) and (c) of the regulations are directory and, therefore, that the defendant's noncompliance with those requirements does not invalidate the tip credit and does not give rise to a private cause of action."

As to count two, which alleged violations of old E4, the trial court agreed with the defendants that the plaintiff's complaint was legally insufficient. Specifically, the court noted as to count two that the plaintiff's claim was "predicated on a regulation repealed on September 24, 2020, rather than §31-60-2, which became effective on September 24, 2020 . . . ." The court concluded, inter alia, that the plain and unambiguous language of §31-60 (d) (4) provides that "all actions *filed* after September 24, 2022, must be adjudicated pursuant to §31-60-2 of the regulations," and that the plaintiff's E4 claim, which was predicated on old E4, was therefore insufficient as a matter of law. (Emphasis in original.)

The trial court also rejected the plaintiff's argument that the application of P.A. 22-134 constituted a taking of his vested property interest in violation of due process. The court stated that the plaintiff's cause of action was solely a creature of statute and did not arise under the common law. The court determined that, because the plaintiff's cause of action had not been reduced to judgment, he did not have any vested interest in that cause

---

[20] The defendants argue that the plaintiff's claim is unpreserved for review by this court because the plaintiff did not challenge the applicability of *Nettleton* v. *C & L Diners, LLC*, supra, 219 Conn. App. 648, to the present case before the trial court. At the time the plaintiff filed his opposition to the defendants' motion to strike, however, this court's decision in *Nettleton* had not yet been released. Furthermore, *Nettleton* was discussed by the parties' counsel at oral argument on the motion to strike. Therefore, we conclude that the plaintiff's claim was properly preserved.

of action. In so concluding, the court relied on *Massa* v. *Nastri*, 125 Conn. 144, 3 A.2d 839 (1939), in which our Supreme Court stated that "a right of action in tort, not existing at common law but depending wholly upon statutory authority and not reduced to judgment before repeal of the statute upon which it rests, or a right to utilize a defense similarly dependent upon statute, is lost by and upon repeal without a saving clause." Id., 149. The trial court finally stated that, even if the plaintiff's old E4 claims were vested, the deprivation of that property right would remain constitutional if it survives a rational basis review, and that the plaintiff did not properly address whether P.A. 22-134 was justified by a rational legislative purpose. Accordingly, the court concluded that the application of P.A. 22-134 was not unconstitutional.

On January 3, 2024, the plaintiff filed a motion to reargue, to which the defendants objected. The trial court denied the motion to reargue, and the plaintiff appealed to this court. Thereafter, the trial court granted the plaintiff's motion for judgment on June 27, 2024, and the plaintiff filed an amended appeal.[21]

We begin with our standard of review. "The standard of review in an appeal challenging a trial court's granting of a motion to strike is well established. A motion to strike challenges the legal sufficiency of a pleading, and, consequently, requires no factual findings by the trial court. As a result, our review of the court's ruling is plenary. . . . We take the facts to be those alleged in the complaint that has been stricken and we construe the complaint in the manner most favorable to sustaining its legal sufficiency. . . . Thus, [i]f facts provable in the complaint would support a cause of action, the motion to strike must be denied. . . . Moreover, we note that [w]hat is necessarily implied [in an allegation] need

---

[21] On June 20, 2024, the defendants filed a motion to dismiss the plaintiff's June 10, 2024 appeal on the ground that it was untimely. This court denied the defendants' motion and ordered, sua sponte, that "the original appeal filed June 10, 2024, is dismissed for lack of a final judgment. The amended appeal may proceed."

not be expressly alleged. . . . It is fundamental that in determining the sufficiency of a complaint challenged by a defendant's motion to strike, all well-pleaded facts and those facts necessarily implied from the allegations are taken as admitted. . . . [W]e assume the truth of both the specific factual allegations and any facts fairly provable thereunder. . . . A [motion to strike] admits all facts well pleaded; it does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings. . . . A motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged." (Citation omitted; internal quotation marks omitted.) *Haworth Country Club, LLC* v. *United Bank*, 226 Conn. App. 665, 677–78, 319 A.3d 146, cert. denied, 350 Conn. 914, 324 A.3d 791 (2024).

I

The plaintiff first claims that the trial court incorrectly concluded that § 31-68 does not provide a private cause of action for a recordkeeping violation under old E3. Specifically, the plaintiff argues that employees have a private right of action to sue when employers take a tip credit without complying with the mandatory rules of old E3. We are not persuaded.

We first set forth the legal principles governing our review of the plaintiff's claim. "Although the interpretation of statutes is ultimately a question of law . . . it is the well established practice of this court to accord great deference to the construction given [a] statute by the agency charged with its enforcement. . . . This principle applies with even greater force to an agency's interpretation of its own duly adopted regulations. . . . Nevertheless, [b]ecause we do not have the benefit of either a prior judicial or a time-tested agency construction of the applicable provisions, we construe the statutes and regulations in a plenary fashion. . . . Moreover, because regulations have the same force and effect as statutes, we interpret both [in accordance with General Statutes § 1-2z]. . . . Section 1-2z provides that [t]he meaning of a statute shall, in the first instance, be ascertained from

the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. In addition, [w]e also note that the minimum wage law should receive a liberal construction in order that it may accomplish its purpose." (Citations omitted; internal quotation marks omitted.) *Nettleton* v. *C & L Diners, LLC*, supra, 219 Conn. App. 664–65.

In *Nettleton*, this court considered the same issue that is now before this court, namely, whether a violation of old E3 gives rise to a private cause of action under § 31-68 (a). See id., 664. *Nettleton* also was a case in which the plaintiff worked as a server at a restaurant operated by a defendant employer and sought recovery pursuant to old E3. Id., 652, 654. This court first set forth the relevant statutory and regulatory background concerning the tip credit regulations; see id., 665–66; and thereafter conducted a comprehensive analysis, determining that old E3 is directory and, therefore, that noncompliance with its provisions does not invalidate the tip credit and give rise to a private cause of action. See id., 667–78.

Recently, this court revisited this issue in *Anderson* v. *Reel Hospitality, LLC*, 233 Conn. App. 618, 342 A.3d 1095, cert. denied, 353 Conn. 926, 346 A.3d 514 (2025). In *Anderson*, the plaintiffs argued that this court in *Nettleton* did not conclude that old E3 did not give rise to a private cause of action. Id., 624. This court disagreed and concluded that *Nettleton* was controlling and that a violation of the recordkeeping requirements in old E3 does not give rise to a private cause of action.[22] See id. The court reasoned that the conclusion in *Nettleton*

---

[22] In *Anderson*, the court noted that the amendments to § 31-60 (d) promulgated by P.A. 22-134 "now expressly [provide] for a private right of action." *Anderson* v. *Reel Hospitality, LLC*, supra, 233 Conn. App. 624 n.13. The plaintiff in the present case, however, has brought claims only under old E3, and not under new E3, as is now required by § 31-60 (d) (4). See part II of this opinion.

that "the recordkeeping requirements in [old E3] of the regulations are directory . . . was not limited to the facts of that case. Indeed, that conclusion does not contain any qualifying language indicating that it was limited to the particular circumstances of that case, and this court explicitly stated that [it] agree[d] with the defendant's claim that the recordkeeping requirements are directory . . . ." (Citation omitted; emphasis omitted; internal quotation marks omitted.) Id., 630. Moreover, this court in *Anderson* stated that the determination in *Nettleton* that noncompliance with the recordkeeping requirements of old E3 does not give rise to a private cause of action was "predicated on an interpretation of the regulation and a legal conclusion that such requirements are directory," and was not limited to the underlying facts presented.[23] Id. This court has now twice held that there is no private right of action for old E3 claims pursuant to § 31-68.[24] Accordingly, we reject the plaintiff's first claim.[25]

## II

The plaintiff's next claim is that P.A. 22-134 was not intended to retroactively take away his substantive rights under the minimum wage act.[26] Specifically, the

[23] For this reason, we also reject the plaintiff's argument that, "if *Nettleton* applies, then whether the plaintiff and the class' claims under 'old E3' are mandatory or directory should be addressed on summary judgment, upon a record of evidence." In *Anderson*, this court made clear that the determination in *Nettleton* was legal in nature and was not limited to the underlying facts presented. See *Anderson* v. *Reel Hospitality, LLC*, supra, 233 Conn. App. 630–31.

[24] At oral argument before this court, the plaintiff's counsel acknowledged that *Anderson* "removes from this court the power to adjudicate [the plaintiff's] E3 arguments." The plaintiff's counsel noted that, at the time of oral argument before this court, a petition for certification to appeal this court's decision in *Anderson* to our Supreme Court was pending. Our Supreme Court subsequently denied the petition for certification on November 18, 2025. See *Anderson* v. *Reel Hospitality, LLC*, 353 Conn. 926, 926, 346 A.3d 514 (2025).

[25] Because our conclusion is dispositive as to the plaintiff's old E3 claim, our analysis of the plaintiff's second and third claims on appeal pertains only to count two, which alleged violations of old E4.

[26] The plaintiff also claims that the trial court incorrectly determined that he "[did] not challenge the application of [§] 31-60 (d) (4), which

plaintiff argues that **(1)** "nothing in [P.A. 22-134] (now codified as §31-60 (d) (4)) explicitly and unequivocally indicat[es] that it is to be applied retroactively to the substantive law of 'old E3' or 'old E4,'" and **(2)** P.A. 22-134 is susceptible to multiple interpretations and, therefore, it is not "'clearly'" retroactive. The defendants counter that, although §31-60 (d) (4) operates prospectively, it does not have any impermissible retrospective effect. Although we agree that the plain language of §31-60 (d) (4) is prospective in nature, we are not persuaded by the plaintiff's argument that the application of §31-60 (d) (4) impermissibly "[took] away [his] substantive cause of action under the minimum wage act."

As a preliminary matter, we note that the applicability of P.A. 22-134 to the present case presents a question of statutory interpretation, over which our review is plenary. See *In re Cole*, 347 Conn. 284, 294, 297 A.3d 151 (2023); see also General Statutes §§ 1-2z and 55-3.[27]

When addressing issues of retroactivity, we begin by asking whether the legislature has expressly prescribed the statute's proper reach. See *Maghfour* v. *Waterbury*, 340 Conn. 41, 46–47, 262 A.3d 692 (2021). "If [it] has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, i.e., whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Landgraf* v. *USI Film Products*,

violates General Statutes [§] 55-3 . . . ." The defendants concede in their brief to this court, and we agree, that the record "reflects that both parties addressed this point in some form or fashion below." We conclude, however, that any error is harmless in light of our determinations that § 31-60 (d) (4) is not retroactive and that, even if we assume arguendo that it had a retrospective effect, its application would not violate the plaintiff's due process rights. See part III of this opinion.

[27] General Statutes § 55-3 provides: "No provision of the general statutes, not previously contained in the statutes of the state, which imposes any new obligation on any person or corporation, shall be construed to have a retrospective effect."

511 U.S. 244, 280, 114 S. Ct. 1483, 128 L. Ed. 2d 229 (1994); cf., e.*g.*, *Maghfour* v. *Waterbury*, supra, 46–47 (concluding that, if plain language of statute does not answer question on appeal, court must examine relationship of statute at issue with law governing retroactivity of statutes).

In *In re Cole*, supra, 347 Conn. 284, our Supreme Court previously explained that "[m]any retroactivity cases, and most of the easy ones, involve what modern scholarship calls primary retroactivity—altering the past legal consequences of past actions. [This includes] legislative creation of criminal or civil liability for completed acts, significantly lessening or adding onto the burdens of past contracts (particularly debt contracts), legislative termination of accrued claims for relief [regardless of whether they are] the subject of a pending action, and legislative undoing of final judgments no longer subject to appeal. . . .

"More troublesome is so-called secondary retroactivity, which refers to statutory changes that solely alter the future legal consequences of past transactions or occurrences. . . . Many changes in the law could be characterized as retroactive in some respect. That is to say, they attach some new, future legal consequences to actions that were taken or decisions that were made prior to their enactment. . . . That alone is not enough to render a statute retroactive. See, e.*g.*, D. Bassett, In the Wake of *Schooner Peggy*: Deconstructing Legislative Retroactivity Analysis, 69 U. Cin. L. Rev. 453, 467 (2001) ([e]ven when laws expressly state that they are to be applied prospectively, it is virtually certain that they will affect expectations and prior transactions). Indeed, we frequently have recognized that a statute does not operate [retroactively] *merely because it is applied in a case arising from conduct antedating the statute's enactment . . . or upsets expectations based in prior law.*" (Citations omitted; emphasis altered; internal quotation marks omitted.) *In re Cole*, supra, 347 Conn. 299–301.

We begin with the text of the relevant statutory amendment. Number 22-134, §1, of the 2022 Public Acts is

codified at § 31-60 (d). Relevant to the issues presented in this case, P.A. 22-134, which added language that has been codified at § 31-60 (d) (4), provides: "Notwithstanding any other law or regulation, any claim brought under this subsection, section 31-68 as it relates to gratuities as part of the minimum wage or section 31-62-E3 of the regulations of Connecticut state agencies filed after September 24, 2022, shall be adjudicated, solely, under 31-60-2 of the regulations of Connecticut state agencies effective on September 24, 2020, and any amendments thereto." Public Act 22-134 was approved by Governor Lamont on May 27, 2022, and took effect upon its passage. See P.A. 22-134, § 1.

The parties both agree that the statutory language is prospective. They disagree, however, as to whether P.A. 22-134 is retroactive in effect. The plaintiff asserts that "this court should not construe [P.A. 22-134] to be retroactive and hold that it applies prospectively only and does not wipe away the substantive standards of 'old E3' and 'old E4.'" The defendants counter that, "[t]o the extent the plaintiff states that § 31-60 (d) (4) is intended to operate prospectively, he is correct. But to the extent he believes that in practice it has not, he is simply wrong." We agree with the defendants.

On its face, P.A. 22-134, § 1, is silent as to the accrual dates of causes of action that are subject to § 31-60 (d) (4). The statute expressly applies to "*any* claim" brought under § 31-60 (d) (4), § 31-68 as it relates to gratuities as part of the minimum wage, or E3, and provides that, if such claims are "filed" after September 24, 2022, they must be adjudicated under § 31-60-2 of the regulations. (Emphasis added.) Nothing in the language of P.A. 22-134, § 1, indicates that the legislature intended to exempt previously accrued, but not yet commenced, causes of action from its purview. See, e.g., *In re Cole*, supra, 347 Conn. 295 (concluding that preexisting debts fell under amended homestead exemption when amendatory language did not indicate that legislature intended to "carve out preexisting (or any other) debts from the reach of the exemption"); *Southwick at Milford*

*Condominium Assn., Inc.* v. *523 Wheelers Farm Road, Milford, LLC*, 294 Conn. 311, 320, 984 A.2d 676 (2009) ("if the legislature had intended to create any exception to this rule . . . we must assume that it would have said so expressly"). We do not see any other reasonable way to interpret § 31-60 (d) (4) but to conclude, like the trial court, that it applies to the present case, which undisputedly was commenced after September 24, 2022.

Accordingly, we conclude that the language of § 31-60 (d) (4) is prospective because it applies to all claims filed *after* September 24, 2022.[28] Section 31-60 (d) (4) did not eliminate the ability of a plaintiff to present a claim under the act; instead, it sought to ensure that, after September 24, 2022, such claims were brought pursuant to the updated regulatory scheme, which was enacted in 2019. See Public Acts 19-1, § 6 (P.A. 19-1); *Nettleton* v. *C & L Diners, LLC*, supra, 219 Conn. App. 657–60. Thus, the principal activity the law seeks to regulate is not the nature of the underlying claims themselves, regardless of when they have accrued but, rather, to ensure that,

[28] The plaintiff states in his principal appellate brief that, when the legislature enacted No. 19-198 of the 2019 Public Acts (P.A. 19-198), the legislature's first attempt to repeal old E4, Governor Lamont vetoed P.A. 19-198 because it was "aimed at retroactively extinguishing 'old E4' claims." We agree with the plaintiff that Governor Lamont vetoed P.A. 19-198 because of his concerns that it was expressly retroactive and presented due process concerns. See P.A. 19-198, § 7 (stating that legislation was "[e]ffective from passage and applicable to actions *pending on or filed on or after said date*" (emphasis altered)).

Public Act 22-134, by contrast, reflects a clear intention by the legislature to make the amendments therein expressly prospective in an effort to avoid retroactivity and/or due process concerns. In a letter to the legislature dated September 23, 2019, which was attached to the plaintiff's objection to the defendants' motion to strike, Governor Lamont stated that P.A. 19-198 raised "serious due process and other constitutional concerns because it retroactively repealed existing regulations governing wages . . . ." Governor Lamont, however, further noted that, following that veto, his administration crafted a "proposal that achieves many of the [legislation's] original goals of the vetoed bill while also protecting workers with legitimate claims to unpaid wages. . . . Rather than retroactively repealing existing regulations, my proposal requires [the Department of Labor] to expedite the promulgation of new regulations." That proposal resulted in the passage of P.A. 22-134.

after September 24, 2022, such claims are brought under the new regulations.[29] See, e.*g*., *In re Cole*, supra, 347 Conn. 308–309. As noted previously in this opinion, old E3 and old E4 were repealed effective September 24, 2020. Thus, as the trial court noted, P.A. 22-134, by requiring that any old E3 or old E4 claims be filed before September 24, 2022, "in effect restores the limitation of § 52-596 so as to exclude the operation of [Governor Lamont's] Executive Order 7G."

Moreover, the plain meaning of the term "file" in § 31-60 (d) (4), if construed according to its commonly approved usage; see General Statutes § 1-1 (a); clearly refers to the date on which an action was brought, not the date on which it accrued. See, e.*g*., Merriam-Webster's Collegiate Dictionary (12th Ed. 2026) p. 608 (defining "file," inter alia, as "to initiate (as a legal action) through proper formal procedure"); see also, e.*g*., *Rios* v. *CCMC Corp.*, 106 Conn. App. 810, 819, 943 A.2d 544 (2008) (action is "filed" when it is returned to court). If the legislature had intended for P.A. 22-134 to apply only to causes of action that *accrued* after September 24, 2022, it could have stated that intention expressly, but it did not do so. See, e.*g*., *Epright* v. *Liberty Mutual Ins. Co.*, 349 Conn. 679, 692, 321 A.3d 354 (2024) ("[i]t is a well settled principle of statutory construction that the

---

[29] We note that, in *Nettleton* v. *C & L Diners, LLC*, supra, 219 Conn. App. 691–95, this court determined that the amendments to the regulations passed pursuant to the legislature's directive in P.A. 19-1 were intended to change, rather than to clarify, the existing regulations. Accordingly, this court concluded that the definition of " 'duties incidental to service' in § 31-62-E2 (d) of the Regulations of Connecticut State Agencies (September 24, 2020)" could not be applied retroactively. See id., 695. These amendments included new E3 and new E4.

Public Act 19-1, however, is not at issue in this appeal. The plaintiff argues only that P.A. 22-134 was impermissibly applied retroactively to his claims. Public Act 22-134 did not direct that the relevant regulations applicable to the plaintiff's claims be changed but, rather, provided that, after September 24, 2022, any claims under § 31-60 (d) (4) "shall be adjudicated, solely, under [the new regulations set forth in §] 31-60-2 of the regulations of Connecticut state agencies effective on September 24, 2020, and any amendments thereto. . . ." General Statutes § 31-60 (d) (4).

legislature knows how to convey its intent expressly" (internal quotation marks omitted)); *State* v. *Moore*, 180 Conn. App. 116, 123, 182 A.3d 696 ("the legislature knows how to make a statute apply retroactively when it intends to do so"), cert. denied, 329 Conn. 905, 185 A.3d 595 (2018). For example, §52-596, the governing statute of limitations in the present case, provides in relevant part that "[n]o action for the payment of remuneration for employment payable periodically shall be brought but within two years after the right of action *accrues . . . .*" (Emphasis added.)

Furthermore, we agree with the defendants that the words "shall be adjudicated, solely," in §31-60 (d) (4) are mandatory in nature. See generally *Lostritto* v. *Community Action Agency of New Haven, Inc.*, 269 Conn. 10, 20, 848 A.2d 418 (2004) ("[d]efinitive words, such as must or shall, ordinarily express legislative mandates of a nondirectory nature, whereas word may ordinarily imports permissive conduct and the conferral of discretion" (internal quotation marks omitted)). Although the word "shall" does not invariably create a mandatory duty; see, e.g., *Nettleton* v. *C & L Diners, LLC*, supra, 219 Conn. App. 667–68; in the present case, the legislature used the limiting word "solely," to emphasize that all actions brought under §31-60 (d) (4) must be brought only under §31-60-2 of the regulations. The legislature's use of such limiting terminology suggests that it intended §31-60 (d) (4) to be mandatory. See, e.g., *Pereira* v. *State Board of Education*, 304 Conn. 1, 16, 37 A.3d 625 (2012) (use of negative terminology suggested that statutory provision was mandatory); *Stewart* v. *Tunxis Service Center*, 237 Conn. 71, 78, 676 A.2d 819 (1996) (same). Indeed, an interpretation of §31-60 (d) (4) that the plaintiff's action could be adjudicated under the old regulations would render the term "solely" superfluous. See, e.g., *Drumm* v. *Freedom of Information Commission*, 348 Conn. 565, 587, 308 A.3d 993 (2024) ("[i]nterpreting a statute to render some of its language superfluous violates cardinal principles of statutory interpretation" (internal quotation marks omitted)).

We disagree with the plaintiff that P.A. 22-134 is susceptible to multiple interpretations and that its application in this case would have an impermissible retroactive effect.[30] The plaintiff argues that "this court should not construe [P.A. 22-134] to be retroactive and hold that

[30] We note that, in support of his argument that P.A. 22-134 is ambiguous, the plaintiff asserts that the defendants had argued before the trial court that P.A. 22-134 is retroactive. We do not agree with the plaintiff's characterization of the defendants' argument before the trial court. Rather, in their memorandum of law in support of their motion to strike the plaintiff's complaint, the defendants argued that, "[b]ecause the plaintiff filed his complaint after September 24, 2022 . . . per . . . § 31-60 (d) (4), his claim must be adjudicated solely under the version of . . . § 31-60-2 [of the regulations] effective on September 24, 2020." (Emphasis omitted.) We interpret the defendants' argument to be consistent with their argument on appeal.

Similarly, the plaintiff contends that the defendants had argued that P.A. 22-134 applies to only " 'new' " E3. Even if we were to consider this alternative argument, we do not construe it to be inconsistent with the defendants' position in the present case. Moreover, even if it were, that would not automatically render the statutory language ambiguous. It is axiomatic that whether statutory language is ambiguous is a matter of statutory interpretation for the court to determine, pursuant to its plenary review of the relevant statute. See, e.g., *777 Residential, LLC* v. *Metropolitan District Commission*, 336 Conn. 819, 827, 251 A.3d 56 (2020) ("[w]hen construing a statute, [the court] adhere[s] to fundamental principles of statutory construction . . . over which our review is plenary" (internal quotation marks omitted)). Furthermore, statutory language does not "become ambiguous merely because the parties contend for different meanings." (Internal quotation marks omitted.) *In re Elianah T.-T.*, 326 Conn. 614, 621, 165 A.3d 1236 (2017). "The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *Glover* v. *Bausch & Lomb, Inc.*, 343 Conn. 513, 529, 275 A.3d 168 (2022). When read in context, we conclude that P.A. 22-134 is not susceptible to more than one reasonable interpretation.

The plaintiff also asserts that the trial court "held that [P.A.] 22-134 was retroactive because 'the language of § 31-60 (d) (4) . . . plainly and unambiguously provides that all actions filed after September 24, 2022, must be adjudicated pursuant to § 31-60-2 of the regulations.' " (Emphasis omitted.) The court did not explicitly conclude that the P.A. 22-134 was retroactive. The court did state in a footnote, however, that the plaintiff "[did] not challenge" the application of § 31-60 (d) (4) in relation to § 55-3. See footnote 26 of this opinion. Even if the court's decision could have implied a conclusion that it had considered P.A. 22-134 to have retrospective effect, we conclude, on the basis of our plenary review of P.A. 22-134, that it does not.

it applies prospectively only and does not wipe away the substantive standards of 'old E3' and 'old E4.'" This argument improperly assumes, however, that the proper "reference point" for purposes of retroactivity in the present case is the date that the underlying causes of action accrued, rather than the date on which they were filed. *In re Cole*, supra, 347 Conn. 301–302. The application of P.A. 22-134 to causes of action that accrued before its passage would not render such application retroactive because P.A. 22-134 does not change the nature of causes of action for a fair minimum wage but, rather, requires that any actions filed after September 24, 2022, be adjudicated under the updated regulations. See, e.g., id., 308 (applying amended statute to preexisting debts was not retroactive application of law because "the accrual of those debts is not the principal activity that the law seeks to regulate" (emphasis omitted)).

The present case is distinguishable from cases in which this court and our Supreme Court have concluded that a facially prospective statute had an impermissible retroactive effect on a substantive right. Our Supreme Court so concluded in *Maghfour* v. *Waterbury*, supra, 340 Conn. 43. In that case, the court considered the legislature's enactment of No. 17-165, § 1, of the 2017 Public Acts (P.A. 17-165), which eliminated the right of plaintiffs to retain sums they had recovered from negligent or reckless third-party tortfeasors if those sums represented medical expenses paid by self-insured municipalities. See id., 48–49. The court reasoned that, because P.A. 17-165, § 1, created a new right for self-insured municipalities and limited the rights of their employees, General Statutes § 7-464, as amended, was substantive. See id., 49. In *Maghfour*, the defendant city asserted that allowing it to file a lien on the plaintiff's settlement proceeds against a third-party tortfeasor would not present a retroactive application of the statute because the plaintiff settled his action against the tortfeasor after the effective date of P.A. 17-165, § 1. Id. Our Supreme Court disagreed, stating that allowing the city to pursue statutory lien rights against the plaintiff would be an improper retroactive

application of P.A. 17-165, §2, because it would attach new legal consequences to events completed before the legislation's effective date. See id., 50. The court elaborated, stating that "[t]hose events are the legal rights to which the plaintiff became entitled as a result of personal injuries sustained by him . . . . The act impaired the right of the plaintiff to obtain compensation for personal injuries caused by the tortfeasor's negligence . . . ." Id. Furthermore, in *Maghfour*, the commencement of the plaintiff's underlying civil action predated the effective date of P.A. 17-165, §1. Id., 51.

In the present case, unlike in *Maghfour*, P.A. 22-134 did not take away the plaintiff's substantive right to bring a claim under the minimum wage act. Rather, P.A. 22-134 specified that, after September 24, 2022, such a claim must be adjudicated under the new regulations. As stated previously, employees may still make claims under P.A. 22-134 to assert claims under the minimum wage act. They, however, must comply with the updated regulations in making such claims, if they are filed after September 24, 2022. Additionally, the legislature effectively offered a grace period of approximately four months between May 27, 2022, the effective date of the statute, and September 24, 2022, to bring old E3 and old E4 claims, and the plaintiff in the present case did not bring this action until after September 24, 2022.[31]

We therefore conclude, on the basis of the plain language of the statute, that §31-60 (d)(4) expresses a clear directive that all claims under it must be adjudicated

---

[31] The plaintiff argues that "it is likely that the General Assembly in fact intended to repeal cases arising under [new E4], which replaced old E3 but not retroactively change the substantive law regarding old E3 and [old] E4." (Internal quotation marks omitted.) Similarly, in his appellate reply brief, the plaintiff asserts that the legislature intended P.A. 22-134 "to only apply to the two year period from [September 22, 2020] to [September 22, 2023]." We conclude that these arguments are speculative and are inconsistent with the plain language of P.A. 22-134 and the new regulations. Nowhere in the statutory language is such an intention expressed. We are not permitted to supply statutory language that the legislature has not provided. See, e.g., *Del Rio* v. *Amazon.com Services, Inc.*, 354 Conn. 151, 180 n.19, 349 A.3d 570 (2026). Although

under the new regulations, if they are filed after September 24, 2022. It is not disputed that the present case was not commenced until after September 24, 2022, and the legislature did not create any exceptions in §31-60 (d)(4) to causes of action that had accrued but were not commenced within the mandatory time frame delineated therein. Accordingly, the legislature has expressly prescribed the statute's temporal reach.[32] Simply put, there is no retroactivity problem in the present case.[33] See, e.g., *In re Cole*, supra, 347 Conn. 310 (concluding that, because legislature did not direct otherwise, expanded homestead exemption applied in all bankruptcy and post-judgment proceedings initiated on or after effective date of legislation, "regardless of when the underlying debts accrued"); see also, e.g., id., 309 n.12 (collecting cases); *Gohel* v. *Allstate Ins. Co.*, 61 Conn. App. 806, 820, 768 A.2d 950 (2001) (concluding that amendment did not create statute with retrospective application but, instead, merely created statute that rendered inoperative any insurance policy provisions inconsistent with statute's requirements). For the foregoing reasons, we

old E4 was repealed, it was replaced by §31-62-E3a, which changed the way in which such a claim may be pursued.

The plaintiff also argues that, if P.A. 22-134 went into effect the day it was signed, and if a server brought a lawsuit on July 1, 2022, P.A. 22-134 "would plainly have retroactively wiped away the server's vested property rights in her 'old E3' and 'old E4' claims from July 1, 2020, to September 23, 2020." We do not agree. First, although the effective date of P.A. 22-134 was May 27, 2022, the provisions codified in §31-60 (d)(4) apply to claims filed after September 24, 2022. Accordingly, old E3 and old E4 claims still could have been brought at any time before September 24, 2022. Second, as we stated previously, P.A. 22-134 did not "wipe away" an employee's claims under the minimum wage act: these claims remain but they must be brought under the new regulations if filed after September 24, 2022. Finally, the mere commencement of a lawsuit, which had not even occurred prior to September 24, 2022, in the present case, does not "vest" a claimant's property right in a purely statutory cause of action. See part III of this opinion.

[32] Moreover, even if we assume arguendo that §31-60 (d)(4) *does* have a retrospective effect, any retroactive application of that statute does not violate due process in the present case. See part III of this opinion.

[33] Because we conclude that §55-3 is not applicable, we need not determine whether P.A. 22-134 effected a substantive or procedural change in the law. See, e.g., *In re Cole*, supra, 347 Conn. 310.

conclude that the court properly applied § 31-60 (d) (4) and correctly concluded that the plaintiff's complaint was legally insufficient as a matter of law because it was not premised on § 31-60-2 of the regulations.

## III

Finally, the plaintiff claims that the trial court incorrectly concluded that P.A. 22-134, which he claims retroactively changed his substantive rights,[34] did not violate his federal and state constitutional rights to due process.[35] We disagree and conclude that, even if we assume arguendo that P.A. 22-134 was retroactive as applied, such retroactive application of P.A. 22-134 did not violate due process.

[34] In his reply brief to this court, the plaintiff argues that the application of P.A. 22-134 violated his procedural due process rights pursuant to the framework established by *Mathews* v. *Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). The plaintiff, however, did not clearly raise a procedural due process claim in his principal appellate brief. See, e.g., *ECR 2, LLC* v. *Thompson*, 232 Conn. App. 586, 595 n.6, 336 A.3d 1275 (2025) ("[i]t is . . . a well established principle that arguments cannot be raised for the first time in a reply brief" (internal quotation marks omitted)).

Furthermore, the plaintiff did not argue before the trial court that his procedural due process rights were violated pursuant to *Mathews*. Rather, the plaintiff argued that "applying [P.A.] 22-134 retrospectively . . . constitutes a taking of the class' vested property interest in [its members' causes of action]" in violation of due process. Even if an argument pursuant to *Mathews* was properly raised, this argument would fail because we have concluded that the plaintiff did not have a vested property interest in a purely statutory cause of action that had not been commenced before the passage of P.A. 22-134. See, e.g., *Frauenglass & Associates, LLC* v. *Enagbare*, 149 Conn. App. 103, 110, 88 A.3d 1246 ("In reviewing a procedural due process claim, we must first determine whether a protected liberty or property interest is involved. If it is, then we must determine the nature and extent of the process due." (Internal quotation marks omitted.)), cert. denied, 314 Conn. 927, 101 A.3d 273 (2014).

[35] The plaintiff does not brief separately a state constitutional due process claim or contend that the state constitution affords greater protections than its federal counterpart. Accordingly, we consider this claim only under the federal constitution. See, e.g., *State* v. *Stephanie U.*, 206 Conn. App. 754, 782 n.8, 261 A.3d 748 (2021), cert. denied, 343 Conn. 903, 272 A.3d 1126 (2022), and cert. denied, 343 Conn. 904, 272 A.3d 1127 (2022).

Determining the "constitutionality of a statute presents a question of law over which our review is plenary. . . . It [also] is well established that a validly enacted statute carries with it a strong presumption of constitutionality, [and that] those who challenge its constitutionality must sustain the heavy burden of proving its unconstitutionality beyond a reasonable doubt. . . . The court will indulge in every presumption in favor of the statute's constitutionality. . . . Therefore, [w]hen a question of constitutionality is raised, courts must approach it with caution, examine it with care, and sustain the legislation unless its invalidity is clear." (Internal quotation marks omitted.) *Doe* v. *Hartford Roman Catholic Diocesan Corp.*, 317 Conn. 357, 405, 119 A.3d 462 (2015). "At their core, the due process clauses of the state and federal constitutions require that one subject to a significant deprivation of liberty or property must be accorded adequate notice and a meaningful opportunity to be heard." *Bhinder* v. *Sun Co.*, 263 Conn. 358, 373, 819 A.2d 822 (2003).

As stated previously, we agree with the trial court that § 31-60 (d) (4) "plainly and unambiguously provides that all actions *filed* after September 24, 2022, must be adjudicated pursuant to § 31-60-2 of the regulations," and that, accordingly, the plaintiff's complaint must be stricken as legally insufficient "unless grounds exist to prohibit the application of . . . [P.A. 22-134]." (Emphasis in original.) Notwithstanding this clear statutory directive, the plaintiff argues that the application of P.A. 22-134 in the present case would result in an impermissible retroactive taking of his substantive rights. The defendants counter, inter alia, that purely statutory rights, such as old E3 and old E4, do not convey a property interest and are lost upon repeal without a savings clause.

We conclude that, even if we were to assume that P.A. 22-134 had a retrospective effect on the plaintiff's cause of action, which had accrued but which was not commenced prior to September 24, 2022, the trial court correctly determined that the plaintiff did not have any vested property right in his purely statutory cause of

action and, therefore, any retroactive effect of §31-60 (d) (4) was not unconstitutional. Although an enactment cannot be applied retroactively when a vested right intervenes; see, e.g., *Family Financial Services, Inc.* v. *Spencer*, 41 Conn. App. 754, 767, 677 A.2d 479 (1996) (concluding that statutory amendment could not be applied retroactively because it would produce substantial change in defendant's vested rights in pending action); in the present case, the plaintiff did not have any vested property interest in a purely statutory cause of action that had not been commenced at the time P.A. 22-134 was enacted. See, e.g., *Bhinder* v. *Sun Co.*, supra, 263 Conn. 373–74 (defendant did not have property right in prior decision of our Supreme Court and, therefore, application of statutory amendment did not violate due process); *Enfield Federal Savings & Loan Assn.* v. *Bissell*, 184 Conn. 569, 573–74, 440 A.2d 220 (1981) (defendant did not have vested right to have his case adjudicated in accordance with statute as it existed at time of original adjudication).

Our Supreme Court's decision in *Massa* v. *Nastri*, supra, 125 Conn. 144, is instructive to our analysis. In that case, the court stated that, "[w]hether or not the rule against retrospective construction applies fully to acts repealing prior statutes, without a saving clause or other clear expression of intention, such repeal does not operate to impair rights that have been vested while the statute was in force. . . . A right of action . . . is a vested property interest, before as well as after judgment, at least where it comes into existence under common-law principles, and *is not given by statute as a mere penalty or without equitable basis*." (Citation omitted; emphasis added; internal quotation marks omitted.) Id., 147. The court further stated with respect to purely statutory rights of action: "[A] right of action . . . not existing at common law but depending wholly upon statutory authority and *not reduced to judgment before repeal of the statute upon which it rests*, or a right to utilize a defense similarly dependent upon statute, is lost by and upon repeal without a saving clause."[36] (Emphasis added.)

---

[36] It is not disputed that § 31-60 (d) (4) does not contain a savings clause.

Id., 149. The court therefore distinguished between "purely" statutory causes of action and causes of action that are grounded both in statutes and in our common law. See id., 149–50; see also 16A C.J.S., Constitutional Law § 486 (2026) ("[g]enerally, a right of action created by statute may be taken away at any time, even after it has accrued and after proceedings have been commenced to enforce it, the rule being that it is not vested and may be taken away at any time prior to final judgment" (footnotes omitted)).

In the present case, it is not disputed that the plaintiff's cause of action is purely statutory. The plaintiff had not even commenced an action pursuant to old E3 and old E4 before the passage of P.A. 22-134, much less reduced that cause of action to a final judgment. Moreover, as stated previously, the legislature, in enacting P.A. 22-134, provided a grace period of approximately four months between May 27, 2022, the effective date of the statute, and September 24, 2022, after which time all actions pursuant to § 31-60 (d) (4) must be brought under the new regulations. Notwithstanding that grace period, the plaintiff still did not commence an action asserting violations of old E3 and old E4 within that time frame. Accordingly, the plaintiff did not have a valid property interest in his purely statutory claim that, although accrued, was not commenced when P.A. 22-134 was passed.[37] See, e.g., *F. H. Whittelsey Co.* v. *Windsor*

[37] For this reason, the plaintiff's attempt to distinguish *Doe* v. *Hartford Roman Catholic Diocesan Corp.*, supra, 317 Conn. 357, is misplaced. Specifically, the plaintiff refers to our Supreme Court's reference in *Doe* to *Goshen* v. *Stonington*, 4 Conn. 209, 221 (1822), in which the court stated that "[i]t is universally admitted, and unsusceptible of dispute, that there may be retrospective laws impairing *vested rights*, which are unjust, neither according with sound legislation, nor the fundamental principles of the social compact." (Emphasis added; internal quotation marks omitted.) *Doe* v. *Hartford Roman Catholic Diocesan Corp.*, supra, 424.

In the present case, however, as stated previously, the plaintiff did not have any vested rights in his old E3 and old E4 claims. Accordingly, the application of § 31-60 (d) (4), regardless of whether that statute is characterized as operating prospectively or retrospectively, did not violate the plaintiff's due process rights. The present case, therefore, is similar to *Doe*, in which our Supreme Court concluded that there

*Locks*, 90 Conn. 312, 315, 97 A. 316 (1916) (rejecting challenge to retroactive legislation because it did not interfere with vested right); see also, e.g., *Ileto* v. *Glock, Inc.*, 565 F.3d 1126, 1141 (9th Cir. 2009) ("Causes of action are a species of property protected by the [f]ourteenth [a]mendment's [d]ue [p]rocess [c]lause. However, a party's property right in any cause of action does not vest until a final unreviewable judgment is obtained." (Internal quotation marks omitted.)), cert. denied, 560 U.S. 924, 130 S. Ct. 3320, 176 L. Ed. 2d 1219 (2010); *Rabin* v. *Fivzar Associates*, 801 F. Supp. 1045, 1055–56 (S.D.N.Y. 1992) (statute did not violate due process clause because final judgment was not rendered until after enactment of statute, and, therefore, rights were not vested). The plaintiff's interest was, instead, more in the nature of a mere expectancy or inchoate hope. See, e.g., *Aspetuck Valley Country Club* v. *Weston*, 292 Conn. 817, 834, 975 A.2d 1241 (2009) ("[a] vested right is one that equates to . . . the present or future enforcement of a demand, or a legal exception from a demand made by another," and right is not vested unless it "amounts to something more than a mere expectation of future benefit or interest founded upon an anticipated continuance of the existing general laws" (internal quotation marks omitted)); 16B Am. Jur. 2d 198, Constitutional Law § 738 (2020) ("[t]o be vested, a right must be absolute, complete and unconditional, independent of a contingency; and a mere expectancy of future benefit does not constitute a vested right" (footnote omitted)).

The United States Supreme Court's decision in *Logan* v. *Zimmerman Brush Co.*, 455 U.S. 422, 102 S. Ct. 1148, 71 L. Ed. 2d 265 (1982), upon which the plaintiff relies, does not compel a contrary conclusion. In that case, the court held that a statutory discrimination claim was a "species of property protected by the [f]ourteenth

is "no absolute vested right in a statute of limitations defense absent entry of a final judgment . . . ." Id., 414–15; see also, e.g., *Blakely* v. *Danbury Hospital*, 323 Conn. 741, 754, 150 A.3d 1109 (2016) (noting that defendant's right to defense under ordinary statute of limitations does not vest for purposes of due process until defendant has successfully asserted that defense through final judgment).

[a]mendment's [d]ue [p]rocess [c]lause." Id., 428. In *Logan*, the plaintiff employee's employment was terminated by the defendant employer "purportedly because [his] short left leg made it impossible for him to perform his duties . . . ." Id., 426. Thereafter, the plaintiff filed a charge with the Illinois Fair Employment Practices Commission (commission) under an Illinois statute barring employment discrimination on the basis of physical handicap unrelated to ability. Id., 424–25. The commission, pursuant to statute, was then obligated to convene a fact-finding conference within 120 days; however, through the commission's inadvertence, this conference did not occur in a timely manner. Id., 426. The court held that the plaintiff's statutory cause of action could not be extinguished by the commission's error without violating due process. See id., 432–33.

In the present case, however, unlike in *Logan*, when the plaintiff commenced the present action, the relevant statutory language had been amended to provide that, under § 31-60 (d) (4), any claims must be brought under the new regulations.[38] In *Logan*, there was not any such amendment to the relevant statute governing the employee's claim, nor was such an issue presented in that case.[39] See id., 425 n.1. Indeed, the court stated that

---

[38] The plaintiff relies on certain out-of-state cases for the proposition that statutory wage claims are entitled to constitutional protection "even before they have been reduced to judgment . . . ." He cites, for example, to *Sanders* v. *Loomis Armored, Inc.*, 418 Pa. Super. 375, 376, 382, 614 A.2d 320 (1992), appeal denied, 535 Pa. 661, 634 A.2d 224 (1993), a case in which the Superior Court of Pennsylvania concluded that applying an expressly retroactive amendment to the Pennsylvania Minimum Wage Act, 43 P.S. § 333.105 (b) (7), to causes of action that already had accrued would violate employees' due process rights. See also *Hageland Aviation Services, Inc.* v. *Harms*, 210 P.3d 444, 448–49 (Alaska 2009) (concluding that unlitigated statutory causes of action become property when they accrue). We decline to follow the reasoning of these nonbinding out-of-state cases, which are unpersuasive and inconsistent with our Supreme Court's decision in *Massa* v. *Nastri*, supra, 125 Conn. 148–49, in which the court stated that purely statutory causes of action that have not been reduced to judgment before repeal are not vested property rights.

[39] The plaintiff also relies on *Boddie* v. *Connecticut*, 401 U.S. 371, 372, 91 S. Ct. 780, 28 L. Ed. 2d 113 (1971), a case that considered whether a

"the [s]tate remains free to create substantive defenses or immunities for use in adjudication—*or to eliminate its statutorily created causes of action altogether*—just as it can amend or terminate its welfare or employment programs." (Emphasis added.) Id., 432.

For the foregoing reasons, the trial court in the present case correctly determined that there could not have been a deprivation of any cognizable property right that could give rise to a due process claim.[40] Accordingly, we conclude that the plaintiff has failed to demonstrate that the court improperly granted the defendants' motion to strike his complaint.

The judgment is affirmed.

In this opinion the other judges concurred.

---

plaintiff's due process rights were violated by the state of Connecticut's requirement of receiving court fees before the filing of marital dissolution actions. *Boddie*, however, did not concern a purely statutory cause of action, or an amendment to such a statute, but, rather, a party's right to access the courts in order to obtain a divorce. See id., 381.

[40] The plaintiff also argues that the trial court improperly (1) applied the rational basis test to his due process claim instead of the *Mathews* balancing test, and (2) improperly concluded that he had not addressed whether P.A. 22-134 was justified by a rational legislative purpose. As noted previously, the plaintiff did not brief the *Mathews* balancing test before the trial court. See footnote 34 of this opinion. In addition, we need not address these arguments in light of our dispositive conclusion that the plaintiff was not deprived of any cognizable, vested property right.